## UNITED STATES v. YAMAMOTO & Co. (No. 2005).[1]

1. CONSTRUCTION, PARAGRAPH R, SECTION III, TARIFF ACT OF 1913—UNUSUAL COVERINGS.

The manifest purpose of that portion of paragraph R, Section III, tariff act of 1913, which levies additional duty upon unusual coverings or containers of imported merchandise is to penalize, not merchandise used as coverings or containers and *imported as merchandise*, but merchandise which is imported and sought to be introduced into the country, not as merchandise, but as coverings or containers. To hold otherwise would be to assume that Congress intended to penalize a mere convenience and economy in transportation which neither affected the interests of the Government nor imperiled its revenue.

[1] T. D. 38338 (38 Treas. Dec., 240).

2. LEATHER TRUNKS CONTAINING MANUFACTURES OF HUMAN HAIR.

Upon an importation of leather trunks containing manufactures of human hair, invoiced as leather trunks and human hair, the additional duty levied upon unusual coverings or containers by paragraph R, Section III, tariff act of 1913, should not be levied, since the trunks were imported as merchandise, no attempt being made to introduce them as coverings. The trunks are dutiable at 30 per cent ad valorem under paragraph 360 as manufactures of leather, and the hair goods at 35 per cent ad valorem under paragraph 351 as manufactures of human hair.

United States Court of Customs Appeals, March 10, 1920.

APPEAL from Board of United States General Appraisers, Abstract 43320.

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid* and *Martin T. Baldwin,* special attorneys, of counsel), for the United States.
*Frank L. Lawrence* for appellees.

[Oral argument Feb. 24, 1920, by Mr. Baldwin.] .

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Two cases of leather trunks marked numbers 122 and 123, and manufactures of human hair packed in the trunks, were classified by the collector of customs at Honolulu, Hawaii, as human hair contained in *unusual coverings,* within the meaning of paragraph R of Section III of the act of 1913. Accordingly, he added the value of the trunks to the value of the hair and assessed duty on that valuation at 35 per cent ad valorem, under paragraph 351 of the tariff act of October 3, 1913. In addition he assessed duty on the trunks at 30 per cent ad valorem under the provisions of paragraph 360.of said act. The part of paragraph R of Section III of the act of 1913, by virtue of which the collector took duty on the trunks at 35 per cent ad valorem as containers of the merchandise, and an additional duty of 30 per cent ad valorem as manufactures of leather, is as follows:

Par. R * * * that such actual market value shall be held to be the price at which such merchandise is freely offered for sale * * * in the usual wholesale quantities, * * * including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings * * * and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment * * * *and if there be used for covering or holding imported merchandise, whether dutiable or free, any unusual article or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duty shall be levied and collected upon such material or article at the rate to which the same would be subjected if separately imported.* (Pertinent part of paragraph.)

. The importers protested that the trunks were not unusual coverings and that duty should have been assessed upon the trunks as manufactures of leather at 30 per cent ad valorem under paragraph 360 of the act of 1913, and on the human hair as manufactures of

human hair at 35 per cent ad valorem under paragraph 351 of the same act. Paragraphs 360 and 351 are as follows:

360. Bags, baskets, belts, satchels, card cases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, made wholly of or in chief value of leather * .* * and manufactures of leather * * * 30 per centum ad valorem.

351. * * .* manufactures of human hair * * * or of which human hair is the component material of chief value, 35 per centum ad valorem.

The Board of General Appraisers sustained the protest and the . Government appealed.

It appears from the record that the importation was not invoiced either as human hair or as a manufacture of human hair, but as leather trunks *and* human hair. It is therefore clear that the importers never pretended or claimed that the trunks were coverings or containers, and that they imported the trunks, not as coverings or containers of merchandise, but as merchandise.

Notwithstanding the fact, however, that the trunks and hair were separately invoiced as distinct classes of merchandise, the Government contends that the trunks must be regarded as containers or coverings contemplated by paragraph R, inasmuch as they held or contained manufactures of hair on arriving within the customs jurisdiction of the United States. That contention we can not sustain, inasmuch as to do so would require an interpretation of paragraph R at variance with the legislative intent of Congress and justified neither by the language used in the provision nor by the history of the legislation.

Section 24 of the act of June 30, 1864, was apparently the first provision of customs law which in express terms provided that to determine the dutiable value of imported goods there should be added to the market value or wholesale price thereof the value of . the sacks, box, or covering in which such goods were contained. That provision reenacted as section 9 of the act of July 28, 1866, and as section 2907 of the Revised Statutes, was repealed by section 7 of the act of March 3, 1883, which provided that the value of the usual and necessary sacks, crates, boxes, or coverings of imported goods, should not be estimated as part of the value thereof for the purpose of determining the amount of duties which should be paid thereon. Section 7 of the act of 1883 laid a duty, however, of 100 per cent ad valorem upon packages, sacks, crates, boxes, or coverings of any kind which were *designed to evade the duties thereon, or which were designed for use otherwise than in the bona fide transportation of goods to the United States.*

It will be noted that all four sections distinguished between imported merchandise and its containers or coverings, and that the act of 1883 went so far as to exempt such coverings and containers from all customs burdens, provided such containers or coverings were not of a material or form *designed to evade duties or designed for use*

*otherwise than in the bona fide transportation of goods imported into the United States.*

Section 7 of the act of 1883 was clearly intended to simplify the collection of customs revenues and to relieve the importer from paying duty on things which were not merchandise but necessary conveniences usually employed for the transportation of imported goods. While the enactment, however, abated what was then regarded as an unwise tax, it at the same time offered to importers the temptation to bring in as containers or coverings things which were really merchandise, and resulted in such abuses and complications that it was repealed by the passage of section 9 of the act of June 10, 1890, the container and covering provision of which was substantially reenacted by section 28 of the act of 1909 and by paragraph R of Section III of the tariff law now in effect.

The manifest purpose of section 7 of the act of 1883, of section 19 of the act of 1890, of section 28 of the act of 1909, and of paragraph R of Section III of the present act, was to penalize not merchandise used as coverings or containers and *imported as merchandise,* but merchandise which was imported and sought to be introduced into the country not as merchandise but as coverings or containers. (See sec. 14, act of June 22, 1874.) In other words, these several enactments were aimed not at merchandise avowedly imported as such, but at merchandise masquerading as coverings or containers. Congress never intended that trunks, telescope baskets, fancy boxes, and like receptacles containing smaller trunks, smaller telescope baskets and smaller fancy boxes invoiced as merchandise, should be classified as containers or coverings and subjected not to the duty imposed upon such articles by the paragraphs of the tariff act, but to the additional penal duty prescribed by the administrative provisions of the customs law. To hold otherwise, it must be assumed that Congress intended to penalize a mere convenience and economy in transportation, which neither affected the interests of the Government nor imperiled its revenues. In that assumption we can not indulge, inasmuch as it is warranted neither by the language of the provision in effect nor by that of previous legislation on the same subject.

We are of the opinion that, inasmuch as the trunks in this case were invoiced and imported as merchandise, and not as coverings and containers, they were not subject to the additional duty imposed by paragraph R, and the decision of the Board of General Appraisers must therefore be *affirmed.*