BEFORE THE FIRST DIVISION, JANUARY 9, 1961

**No. 65026.**—Pez Haas, Inc. *v.* United States, protest 59/5089 (New York).

OLIVER, Chief Judge: Plaintiff, an importer of candy, imported certain candy dispensers, consisting of a "Pez" gun which, at the time of importation, contained, in the magazine compartment thereof, a supply of "Pez" peppermints (plaintiff's exhibit 1). The imported merchandise was assessed with duty at the rate of 14 per centum ad valorem under the provision in paragraph 506 of the

Tariff Act of 1930, as modified, for confectionery, valued at 6 cents or more per pound. In addition, the collector regarded the "Pez" guns as unusual containers for the candy and, therefore, assessed additional duty thereon, pursuant to the provisions of section 504 of the Tariff Act of 1930, at the rate of 35 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as amended, being the rate applicable to toys, not specially provided for, which the collector considered to be the appropriate rate for the "Pez" guns, if they had been imported separately. Section 504 of the Tariff Act of 1930 reads as follows:

SEC. 504. COVERINGS AND CONTAINERS.

If there shall be used for covering or holding imported merchandise, whether dutiable or free of duty, any unusual material, article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duties shall be levied upon such material, article, or form at the rate or rates to which the same would be subjected if separately imported.

Plaintiff makes several claims. Pertinent to our disposition of this case are the claims, made by valid amendment to the protest, that the "Pez" gun is not an unusual container within the purview of section 504, *supra*, and, therefore, not subject to the additional duty imposed thereon, and that the imported merchandise—the "Pez" gun with the candy—is dutiable as an entirety, either at the rate of 35 per centum ad valorem under paragraph 1513, as amended, as a toy, not specially provided for, or at the rate of 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as amended, as a nonenumerated manufactured article. It is further alleged, by amendment to the protest, that the "Pez" guns "are separately dutiable at 10% ad valorem under Paragraph 1558 as modified or at 35% ad valorem under Paragraph 1513 as modified."

Plaintiff's vice president and sales manager was the sole witness who appeared herein. He identified the imported merchandise—the gun containing the candy—as a "Pez candy dispenser." (R. 8.) The gun is concededly composed of polystyrene and is made to simulate a space gun. The witness stated that he designed the "Pez" gun for the sole purpose of selling more "Pez" candy.

Describing the method of using the imported merchandise, the witness testified that a plate at the bottom of the gun slides out and that a supply of peppermints is inserted in the magazine and the bottom plate is replaced. By pulling the trigger, the gun shoots out a piece of the candy. The witness testified further that, during his association with plaintiff over a period of 7 years, he has traveled throughout the United States and observed the use of the imported merchandise "thousands of times," that, throughout the entire period, it has been exclusively used by children, and that whenever he saw "a child handling a Pez gun it was used for dispensing candy." In further testimony, the witness stated that the "Pez" gun is never used without containing a supply of peppermints and that when the supply of candy has been consumed, a refill (plaintiff's exhibit 3), which is sold separately, is purchased.

The witness identified a collection of different forms of "Pez" candy dispensers (plaintiff's collective illustrative exhibit 2) that are designed and produced by plaintiff to promote the sale of the candy "for the various holidays" (R. 14), i.e., "Santa Claus," "Easter bunny," "Hollowe'en witch," "Popeye the Sailor," "space man," and a plain plastic container with snap-on cover. All of them consist of a plastic container substantially the same, if not identical, with the magazine compartment of the gun (exhibit 1, *supra*) and made to hold a package of peppermints, the same as the candy used in the merchandise under consideration. The top of each of the plastic dispensers is the head of the figure it represents, except the plain one. Comparing the method of operation of the group of dispensers (plaintiff's collective illustrative exhibit 2) with the one in question (plaintiff's exhibit 1), the witness testified as follows (R. 14):

Well, the first stage works the same as in all the other dispensers. In other words, it pushes the candy up. Then the second stage on these dispensers, Exhibit 2, you have to press the head down for the candy to come out. And on the gun you pull the trigger for the candy to come out.

Testifying further with respect to all of the "Pez" candy dispensers, the witness stated that the sole purpose in using such dispensers is to enhance the sale of "Pez" candy and that they are designed for, and actually used by, children.

At this point, it should be noted that the collector, in assessing the ordinary or regular duties under paragraph 506, as amended, followed the provisions of section 402, which sets forth the basis for the assessment of ad valorem duties, and provides that the value of imported merchandise shall include the cost of "all containers and coverings of whatever nature" (thereby including in the value, the cost of containers, whether usual or unusual). Consequently, the regular ad valorem duties imposed on the imported merchandise were so assessed upon the basis of the combined values of the confectionery and the gun.

It follows therefrom that the primary question before us is whether the "Pez" gun is an unusual container of merchandise, as contemplated by section 504, *supra*. Substantially the same issue was presented in *American Customs Brokg. Co. et al.* v. *United States*, 43 Cust. Ct. 329, Abstract 63321. In that case, the merchandise consisted of a toy pistol that was constructed and designed for use with tiny, colored, candy pellets contained in the magazine compartment at the time of importation. In holding that the toy pistol was not an unusual container of merchandise within the purview of section 504, *supra*, we followed the statutory construction enunciated in *United States* v. *Yamamoto & Co.*, 10 Ct. Cust. Appls. 70, T.D. 38338, which arose under the Tariff Act of 1913, that contained provisions (paragraph R of section III) identical with those of section 504, *supra*. In the *Yamamoto* case, earlier statutes, having language substantially the same as, or identical with, said section 504, were discussed, and then the court concluded as follows:

The manifest purpose of section 7 of the act of 1883, of section 19 of the act of 1890, of section 28 of the act of 1909, and of paragraph R of Section III of the present act, was to penalize not merchandise used as coverings or containers and *imported as merchandise*, but merchandise which was imported and sought to be introduced into the country not as merchandise but as coverings or containers. (See sec. 14, act of June 22, 1874.) In other words, these several enactments were aimed not at merchandise avowedly imported as such, but at merchandise masquerading as coverings or containers. * * * [Italics quoted.]

Under the foregoing judicial interpretation, the "Pez" guns involved herein are not unusual coverings or containers for merchandise, as contemplated by section 504, *supra*. Plaintiff's uncontradicted testimony establishes that these "Pez" guns are always imported and sold with a quantity of peppermints in the magazine compartment, that the sole purpose thereof is to shoot the candy peppermints which are made of a specific size for use with the guns, and that, when the supply of candy is consumed, the guns are never used alone.

Counsel for defendant, in their brief, have cited a line of cases which held various kinds of articles to be unusual containers of imported merchandise. *United States* v. *Charles H. Demarest, Inc.*, 19 C.C.P.A. (Customs) 186, T.D. 45293; *United States* v. *Hohner et al.*, 4 Ct. Cust. Appls. 122, T.D. 33393; *Meyer & Lange* v. *United States*, 12 Ct. Cust. Appls. 15, T.D. 39892; *C. A. Clark* v. *United States*, 27 Treas. Dec. 90, T.D. 34676; *Meyer & Lange* v. *United States*, 46 Treas. Dec. 215, T.D. 40402; *Adams-Flanigan Co.* v. *United States*, 57 Treas. Dec. 657, T.D. 43986; *Young's Market et al.* v. *United States*, 56 Treas. Dec. 937, Abstract 10389; *Lee & Schiffer, Inc.* v. *United States*, 64 Treas. Dec. 982, Abstract 25579; and *Columbia Mfg. Co.* v. *United States*, 63 Treas. Dec. 489, T.D. 46256. All of the cited cases are distinguishable from the present one. In

each of them, the court found that the article used as an unusual container was "designed for use otherwise than in the bona fide transportation" of merchandise and, therefore, was subject to the additional duty. This is not so as to the "Pez" gun which, with the imported quantity of peppermints, is the imported merchandise. As stated in *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C.D. 1619, in discussing the provisions of section 504, "an article cannot be at the same time both the merchandise which is being imported and the container for the merchandise which is being imported."

For the reasons hereinabove set forth, and consistent with our conclusion, *on the same issue*, in the *American Customs Brokg. Co. et al.* case, *supra*, we hold that the "Pez" gun under discussion is not an unusual container of merchandise, within the purview of section 504, and, therefore, hold the collector's assessment of duty thereunder to be erroneous.

Consideration is now directed to the matter of classification. In this connection, the claim that the imported merchandise is an entirety is of prime importance. Plaintiff's uncontradicted testimony establishes that the "Pez" gun, with the imported quantity of peppermints in the magazine compartment thereof, is a separate commercial entity, that the combination of articles, in the condition as imported, is a candy dispenser, that the gun is never sold without candy in the magazine compartment, that the gun is never used without the candy peppermints, and that the gun, without the candy, serves no useful purpose. The sample (exhibit 1, *supra*), by its design and construction, supports the oral testimony that the imported merchandise is a candy dispenser whose purpose is to enhance the sale of "Pez" candy. The size of the magazine compartment of the gun is such as to accommodate a package of peppermints (plaintiff's illustrative exhibit 3), thus giving evidence of the dedicated use of the article as a dispenser of this candy.

That packages of peppermints, such as the sample in evidence (plaintiff's illustrative exhibit 3), are sold separately and used as refills, is not material to the present issue. The refills are bought and sold in the trade as separate units, and, so far as the present discussion is concerned, are used to replenish the original imported quantity of peppermints after they are consumed. The confectionery so used, i.e., as refills, is an individual commercial product, which has no bearing on the outcome of this case.

Plaintiff's undisputed evidence—oral testimony coupled with the sample of the merchandise in question (exhibit 1, *supra*)—makes the candy dispenser under consideration comparable with the mechanical pencil, containing one piece of lead in the mechanism ready for writing and no magazine or chamber for refill leads, which was the subject of decision in *S. S. Kresge Co. et al.* v. *United States*, 69 Treas. Dec. 917, T.D. 48328, wherein the court stated as follows:

It thus appears that a mechanical pencil with a lead in the mechanism only, and without extra refill leads, is considered a complete entity. Without the lead in the mechanism the pencil would be useless, but with it, according to the record, it becomes a complete article of commerce, while extra refill leads are additions to what the record shows to be an already complete article.

The same is true with respect to the "Pez" candy dispenser in question. The gun, with the candy therein, is a complete entity, and the refills are additions to an already complete article. The imported commodity, comprising the gun with the peppermints, is an entirety, and properly classifiable as such, for tariff purposes. We proceed accordingly.

Under the principle that the provision for nonenumerated manufactured articles cannot be applied until it is determined that the merchandise is not provided for in any of the enumerated provisions of the tariff act, *Package Machinery Co.* v. *United States*, 41 C.C.P.A. (Customs) 63, C.A.D. 530, our attention, at this

time, is directed to the claim for classification as a toy, not specially provided for, under paragraph 1513, as amended, which is the only specific provision alleged by plaintiff to be applicable to the present merchandise. The record herein includes an agreement between counsel for the respective parties that "if the court finds that the space gun is not a toy, either with or without the candy, then it is properly dutiable at 10 percent under paragraph 1558 as a nonenumerated manufactured article." (R. 4.)

Tariff classification of merchandise as toys is controlled by statutory definition, set forth in paragraph 1513 of the Tariff Act of 1930, as follows:

PAR. 1513. * * *. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

The controlling element in the foregoing definition is the matter of chief use, and such use is "for the amusement of children."

The uncontradicted testimony, as it relates to the use of the present merchandise, is conclusive in showing that plaintiff designed and produced this "Pez" gun for the sole purpose of promoting the sale of "Pez" peppermints and that the imported commodity is exclusively used by children as a candy dispenser. That children derive incidental amusement in using the imported article, does not detract from finding, as we do, that the principal or controlling use thereof is as a candy dispenser, specially made to be a medium for the sale of "Pez" candy.

The case of *United States* v. *August Merckens*, 17 C.C.P.A. (Customs) 318, T.D. 43742, is in point. There, the merchandise consisted of a small vending machine, having a slot for insertion of a penny, whereupon, by the pulling of a slide, a small bar of chocolate was delivered to the operator. When the supply of small chocolate bars was exhausted, others, called refills, were supplied, and the machine was again ready for operation. In holding that the article was not a toy, the appellate court stated as follows:

* * * Of course, children might be entertained to some extent by the mere mechanical operation of the machines, but we are inclined to the opinion that this entertainment is but incidental. It must be borne in mind that the machine will not function unless it contains these "bars" and that the real purpose of the operator is to secure one or more of them. It might be said also that the articles are convenient containers for chocolate bars and, to a degree, serve the purpose of "penny banks," and that the articles were designed for all of these purposes. There is no evidence in the record that they are ever used by children as mere playthings, nor does an inspection of the exhibit in the case, in our opinion, indicate that they are so used. * * *

In *United States* v. *Globe Overseas Corporation*, 13 Ct. Cust. Appls. 10, T.D. 40849, certain rubber sponges made in the shape of animals and used for bathing children were held not to be toys, upon a finding that the amusement which children derived from the use of the articles was incidental to the utilitarian purpose and use to which the articles were put and for which they were designed.

In this case, the record shows that while children are entertained to some extent in obtaining pepermints from the "Pez" gun, this entertainment is but incidental to the practical purpose and use of the imported article as a dispenser of candy.

Plaintiff's evidence, as hereinabove discussed, is sufficient to show that the candy dispenser in question is not a toy. The uncontradicted testimony of the sole witness, an officer of the plaintiff and importing corporation, whose experience, observing the use of the merchandise involved herein has extended

throughout the United States, establishes that the chief use of this candy dispenser is as a sales medium to increase the sale of "Pez" candy, and not for the amusement of children. The controlling influence of such testimony was stated by the appellate court, in *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120, as follows:

\* \* \* Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares. \* \* \*

It is also appropriate, in the light of the testimony adduced by plaintiff, to set forth our comment in *J. E. Bernard & Company, Inc.* v. *United States*, 27 Cust. Ct. 291, Abstract 55793, which involved celluloid reindeer of various sizes that had been classified as toys and claimed to be dutiable as articles in chief value of compounds of celluloid, and wherein we stated:

The uncontradicted testimony of a single witness is sufficient to throw the burden on the Government of showing that the chief use of this merchandise was not as stated by the witness, but to amuse children. *Nadel & Schimmel* v. *United States*, 61 Treas. Dec. 927, T.D. 45629. In the case at bar, plaintiff's witness stated a use for this merchandise other than for the amusement of children. The testimony shows that the chief use of the merchandise is for a decorative effect. This proof has not been rebutted nor contradicted by the defendant in any way and indicates *prima facie* that it is chiefly used for the purpose stated by the witness. In addition, an examination of the sample indicates that it is suitable for such use. We therefore hold that the plaintiff has made out a *prima facie* uncontradicted case showing that these celluloid reindeer are not toys. \* \* \*

The substance of the foregoing quotation, as it relates to the principle of "chief use," has equal application, with the same force and effect, as to the candy dispenser involved in this case. Accordingly, we hold, on the basis of the present record and for all of the reasons hereinabove set forth, that the merchandise in question is not classifiable as a toy under the statutory definition of the term, as set forth in paragraph 1513, *supra*.

The conclusion does not follow the *American Customs Brokg. Co. et al.* case, *supra*. The distinction between that case and the present one is based on the record evidence which, in this case, is materially different from that presented in the cited case. In the *American Customs Brokg. Co. et al.* case, plaintiff conceded that the imported merchandise was a toy. There is, of course, no such concession in this case.

The exclusion of the present merchandise from the provision for toys, as we hold herein, coupled with the agreement between the parties that the imported commodity would not otherwise be covered by any of the enumerating provisions of the tariff act, brings the candy dispenser under consideration within the provision for nonenumerated manufactured articles in paragraph 1558 of the Tariff Act of 1930, as modified, and dutiable thereunder at the rate of 10 per centum ad valorem, as claimed by plaintiff, and we so hold.

Consideration has been given to all of the cases cited in the briefs of counsel for the respective parties. Reference herein has been made only to those cases deemed necessary to support the reasoning followed and the conclusions reached.

The protest is sustained and judgment will be rendered accordingly.