(C.D. 3749)

THE SPESCO CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 26, 1969)

*Barnes, Richardson & Colburn* and *Gerstein & Carter* (*Earl R. Lidstrom, Joe W. Gerstein, James S. O'Kelly,* and *Hadley S. King,* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Dominick Minerva, Irving A. Mandel,* and *Robert T. Richardson,* trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves the proper classification of five small candy-filled replicas of hand tools which were imported from Hong Kong via Savannah, Georgia, and were invoiced as "PLASTIC TOYS * * * Candy filled (Screwdriver; Axe; Hammer; Chisel; Plier)." They were classified by the customs collector as toys under item 737.90 of the Tariff Schedules of the United States (19 U.S.C. § 1202), and assessed with duty at the rate of 35 percent ad valorem.

Plaintiff challenges this classification, claiming that the merchandise is properly classifiable under item 157.10 of the tariff schedules as candy and other confectionery, dutiable at 14 percent ad valorem. In the alternative, it claims classification under item 774.60 as articles of plastic, dutiable at 17 percent ad valorem, or under item 799.00 as nonenumerated articles, dutiable at 10 percent ad valorem. As a further alternative, plaintiff claims that the candy pellets are classifiable under item 157.10 as candy and that the small replicas of hand tools are classifiable under item 774.60 as plastics, or under item 737.90 as toys. We affirm the collector's classification of the articles as toys under item 737.90.

Quoted below are the provisions of the tariff schedules with which we are concerned:

Classified under:

Schedule 7, part 5, subpart E:

> Subpart E headnotes:
>
> > 1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules * * *.
> >
> > \* \* \* \* \* \* \*
> >
> > 2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.
> >
> > \* \* \* \* \* \* \*
> >
> > Toys, and parts of toys, not specially provided for:
> >
> > \* \* \* \* \* \* \*

737.90          Other _____ 35% ad val.

Claimed under:

> GENERAL HEADNOTES AND RULES OF INTERPRETATION
>
> \* \* \* \* \* \* \*
>
> 6.    Containers or Holders for Imported Merchandise.
>
> \* \* \* \* \* \* \*

(b) Not Imported Empty: Containers or holders if imported containing or holding articles are subject to tariff treatment as follows:

> (i) The usual ordinary types of shipping or transportation containers or holders, if not designed for, or capable of, reuse, *and containers of usual types ordinarily sold at retail with their contents*, are not subject to treatment as imported articles. Their cost, however, is,

under section 402 or section 402a of the tariff act, a part of the value of their contents and if their contents are subject to an ad valorem rate of duty such containers or holders are, in effect, dutiable at the same rate as their contents, except that their cost is deductible from dutiable value upon submission of satisfactory proof that they are products of the United States which are being returned without having been advanced in value or improved in condition by any means while abroad.[1]

(ii) The usual or ordinary types of shipping or transportation containers or holders, if designed for, or capable of, reuse, are subject to treatment as imported articles separate and distinct from their contents. Such holders or containers are not part of the dutiable value of their contents and are separately subject to duty upon each and every importation into the customs territory of the United States unless within the scope of a provision specifically exempting them from duty.

(iii) In the absence of context which requires otherwise, all other containers or holders are subject to the same treatment as specified in (ii) above for usual or ordinary types of shipping or transportation containers or holders designed for, or capable of, reuse.

\*   \*   \*   \*   \*   \*   \*

157.10  Candy, and other confectionery, not specially provided for_____ 14% ad val.

\*   \*   \*   \*   \*   \*   \*

Articles not specially provided for, of rubber or plastics:

\*   \*   \*   \*   \*   \*   \*

774.60  Other _____ 17% ad val.

\*   \*   \*   \*   \*   \*   \*

Any article, not provided for elsewhere in these schedules:

\*   \*   \*   \*   \*   \*   \*

799.00  Other _____ 10% ad val.

The imported merchandise consists of replicas, approximately five inches in length, of various hand tools such as screwdrivers, axes, hammers, chisels and pliers. The handles are hollow and contain small ($\frac{3}{16}$ of an inch in diameter) different-colored candy pellets. The tool replicas are made of a soft material which appears to be plastic. The working end of each replica is an opaque silver color, while the

---

[1] The italicized part of headnote 6(b)(1) was added by section 4 of the Tariff Schedules Technical Amendments Act of 1965, Public Law 89-241, 79 Stat. 933, 934, 19 U.S.C. (Supp. III, 1965-67) § 1202.

handle—which contains the candy pellets—is translucent. The handle fits over the working portion of the tool and it can easily be pulled off (to remove the pellets) and snapped back on by exerting a small amount of pressure.

The additional facts established in the record are these.[2] Plaintiff is in the business of importing general merchandise from all over the world. It displayed advance samples of the imported merchandise at the National Candy Show in the 1963–64 period. "None were sold" at a toy show that was also held in that period. Subsequently plaintiff sold the imported articles principally to candy and tobacco distributors, and in various instances their retail customers displayed and sold them at candy counters. Some retail stores which had a toy and novelty section at the candy counter displayed the importations there. Children have been observed in such stores playing with articles similar to the importations immediately after they had been purchased and before the candy pellets were removed.

The pellets are very cheap candy which are not sold in bulk but rather in novelty containers. The entire imported article sells at retail for five cents.

Against this background, plaintiff's first argument is that the importations are classifiable as candy under item 157.10 on the asserted basis that the hand-tool replicas are "containers of usual types ordinarily sold at retail with their contents" within the meaning of the 1965 amendment to General Headnote 6(b)(i) (see note 1, *supra*), and are thus not subject to treatment as imported articles. We can not agree.

For one thing, except as specifically provided in headnote 6(b)(ii), the concept of "usual" containers does not include those which are designed to have significant uses quite apart from their original contents. This is made clear by the following excerpt from the House Ways and Means Committee Report on section 4 of the 1965 Technical Amendments Act dealing with General Headnote 6(b)(i): [3]

### 3. Proposed changes

The amendment made by section 4 would clarify the tariff treatment of "containers of usual types ordinarily sold at retail with their contents," and would insure continuation of customs practices in effect under the old tariff schedules with respect to such usual containers under which they were not separately classified as imported articles. The concept of "usual" containers includes a variety of containers such as plastic envelopes for carrying rainwear when not in use, cases designed for electric shavers, and tobacco tins, which may continue to be used by the purchaser to "house" the original contents but which, when that purpose

---

[2] Plaintiff presented one witness—the president of the plaintiff-importer. Defendant also presented one witness—a salesclerk employed in the candy department of a leading Atlanta, Georgia, department store.

[3] H. Rept. 342, 89th Cong., 1st Sess. (1965), p. 5.

has been fulfilled, are usually discarded because of their lack of durability or their general unsuitability for other uses. On the other hand, *this concept does not include containers, even though sold at retail with their contents, if such containers are designed to have significant uses quite apart from their original contents.* For example, humidors filled with tobacco, *miniature cedar chests containing* cigars or *candy,* and *dollhouses filled with confections would not be regarded as "usual" containers.* [Emphasis added.]

Examination of the sample—without more—leaves no doubt that the tool replicas "have significant uses quite apart from their original contents" as playthings for children. Such obvious usage was corroborated by the testimony of defendant's witness that she had seen children actually playing with similar articles. Further, the imported merchandise consists of candy with five different types of containers, i.e., a screwdriver, an axe, a hammer, a chisel and pliers. When it is considered that the articles are so differently shaped, it is difficult to understand how they can all be usual. Lastly, the following testimony of plaintiff's own witness indicates that these items are not the *usual* containers for candy (R. 39) :

Q. Based upon your experience * * * would you tell us whether it is unusual for candy to be marketed or sold in containers such as Plaintiff's Collective Exhibit 1?—A. From my market survey it is a very common thing for a company to put them in a container.

Q. Will you tell us whether this particular container is *unusual* in the candy business?—A. *Yes, this is novelty candy.* [Emphasis added.]

Plaintiff insists, however, that *American Customs Brokerage Co.* v. *United States,* 43 Cust. Ct. 329, Abstract 63321 (1959), and *Pez Haas, Inc.* v. *United States,* 46 Cust. Ct. 290, Abstract 65026 (1961), support its claim that the imported tool replicas are usual containers. But these cases are quite distinguishable—on this particular aspect. Involved in *American Customs Brokerage* were toy pistols which used candy pellets as "ammunition." The pistols were classified as toys under paragraph 1513 of the Tariff Act of 1930, as modified, dutiable at 35 percent, and the candy pellets were classified as confectionery under paragraph 506, as modified, dutiable at 14 percent. Further, the collector regarded the pistols as *unusual* containers for candy and assessed additional duties under section 504 of the act which provided :

If there shall be used for covering or holding imported merchandise, whether dutiable or free of duty, any unusual material, article, or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States, additional duties shall be levied upon such material, article, or form at the rate or rates to which the same would be subjected if separately imported.

In this context, plaintiff in *American Customs Brokerage* claimed first, that the duty under section 504 was illegally assessed and second, that the entire item—the pistol with the pellets in it—should be classified as an entirety dutiable at 35 percent only. Both claims were sustained by the court. As to the first claim, the court held that the containers were not unusual containers within the meaning of section 504. The rationale was that the purpose of that section was to require additional duties on merchandise *masquerading* as coverings or containers, and that the pistols were not in that category. As the court pointed out: "[A]n article cannot be at the same time both the merchandise which is being imported and the container for the merchandise which is being imported." *Id.* at 331. On the second claim, the court held that the toy pistol, with the supply of pellets contained in the magazine compartment, was a complete entity and thus constituted an entirety properly classifiable as a toy, with duty at 35 percent.

*Pez Haas, Inc.* v. *United States, supra,* 46 Cust. Ct. 290, reached the same conclusion with respect to the applicability of section 504. The question there concerned the proper classification of certain candy dispensers, consisting of a "Pez" gun which contained in a magazine compartment a supply of "Pez" peppermints. The collector classified the merchandise as confectionery and, in addition, regarded the "Pez" guns as unusual containers for the candy within the meaning of section 504 and imposed an additional assessment on them as toys. For the same reasons as set out in *American Customs Brokerage,* the court rejected the collector's classification and held that the "Pez" guns were not unusual containers since they were the merchandise itself. The court held further that the imported article was an entirety; that the candy dispenser was not a toy; and that the entity was therefore classifiable as a nonenumerated article.

The important consideration in all this is that the court's rejection—in *American Customs Brokerage* and *Pez Haas*—of the imported articles as *unusual* containers within the meaning of section 504 in no way means—as urged by plaintiff here—that they were held to be *usual* containers. Indeed, the question of whether the items were usual containers was not in issue. Moreover, had the court found that the toy pistols and "Pez" guns were *usual* containers, as suggested by plaintiff, the pistols and guns would have been held dutiable at the rate applicable to the candy pellets contained therein.

A related argument by plaintiff is that in the event the court does not find the tool replicas to be usual containers under headnotes 6(b) (i) or (ii), headnote 6(b)(iii) requires that the value of the plastic container and the candy be split and the matter referred to a single judge for determination of separate values for the candy pellets and plastic containers. This argument, however, is based on a misconception of headnote 6(b)(iii). So far as the present problem is concerned,

that headnote merely re-enacted in substance the provisions of section 504 of the Tariff Act of 1930. See U.S. Tariff Commission, *Tariff Classification Study—Proposed Revised Tariff Schedules of the United States* (Nov. 15, 1960), p. 8; U.S. Tariff Commission, *Tariff Classification Study—Submitting Report* (Nov. 15, 1960), pp. 18, 41, 52–53. Therefore, the headnote—like its predecessor, section 504—is among other things "aimed not at merchandise avowedly imported as such, but at merchandise masquerading as covers or containers." *United States* v. *Yamamoto & Co.*, 10 Ct. Cust. Appls. 70, 73, T.D. 38338 (1920). See also *American Customs Brokerage Co.* v. *United States, supra*, 43 Cust. Ct. at 330; *Pez Haas, Inc.* v. *United States, supra*, 46 Cust. Ct. at 292. In this circumstance, it is perfectly evident that here—as in *American Customs Brokerage* and *Pez Haas*—the tool replicas do not constitute "merchandise masquerading as coverings or containers." Rather, they comprise the actual merchandise being imported and hence are not containers at all within the meaning of headnote 6(b) (iii).

This brings us to plaintiff's alternative claim that the tool replica portion of the imported merchandise is not a toy and is thus dutiable as a manufacture of plastic under item 774.60. Since the merchandise was classified as a toy by the collector, there is of course a presumption that it is a plaything chiefly used for the amusement of children (or adults). The testimony of plaintiff's only witness was manifestly insufficient to overcome this presumption. The sum total of his testimony was that he purchased the imported merchandise, that his company sold it principally to candy and tobacco distributors, and that in various instances retail establishments displayed and sold it at candy counters. No doubt the manner in which a merchant displays his goods can have important probative value as to their classification. E.g., *New York Merchandise Co.* v. *United States*, 62 Cust. Ct. 38, C.D. 3671 (1969); *Davis Products, Inc.* v. *United States*, 59 Cust. Ct. 226, 230, C.D. 3127 (1967). However, reliance upon the merchandise medium through which the articles are sold is not always a proper criterion to determine their classification. *United States* v. *Ignaz Strauss & Co.*, 37 CCPA 32, 35, C.A.D. 415 (1949). This is the case here. For the mere fact that these items were distributed by candy and tobacco wholesalers and were displayed and sold at candy counters is scarcely sufficient to show they were not toys—particularly where the record establishes that various types of toy items are in some instances displayed and sold at candy counters.

Nor did plaintiff present any evidence as to the actual use of the imported article. Indeed, there is no indication in the record that plaintiff's only witness even saw the merchandise used. Moreover, there is nothing in the record to suggest that the witness had any qualifying

knowledge concerning the use of the imported merchandise by virtue of his position as president of the plaintiff concern. For not only was the concern engaged in the importation of *general* merchandise, the witness was not qualified as an expert in either the candy or toy line.

An additional difficulty is that the testimony of plaintiff's witness was directed to this particular importation and not to the general class or kind of merchandise to which the importation belongs. "The actual use to which the merchandise sold by plaintiff is put is not determinative of its chief use; it is the use of the particular class or type of goods, as a whole, that is controlling." *William Shaland Corp.* v. *United States*, 280 F. Supp. 457, 459, C.D. 3308 (1968).

Without merit is plaintiff's further contention that the importation is not suitable for use as a toy because it is of fragile construction and could not endure extensive play by children. Judging from the sample, the material out of which the tool replicas are made appears to be sufficiently durable to withstand the ordinary play of children. While the replicas are not designed to perform acts of carpentry, they seem entirely suitable for the imaginary play world of a child. Cf. *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, C.D. 3061 (1967). But even assuming that the tool replicas are of flimsy construction, a toy ordinarily is not expected to last a lifetime. And the fact that merchandise is made of cheap, flimsy construction hardly precludes its classification as a toy. See e.g., *William Shaland Corp.* v. *United States, supra,* 280 F. Supp. 457; *United States* v. *Sheldon & Co.,* 14 Ct. Cust. Appls. 260, T.D. 41879 (1926).[4]

The protest is overruled. Judgment will be entered accordingly.

(C.D. 3750)

J. E. BERNARD & CO., INC. *v.* UNITED STATES

---

[4] It is axiomatic that the government representative who classifies an importation is presumed to have found every fact needed to support his classification. Thus, in the present case, since the government representative classified the tool replicas and candy contents as toys, the presumption is that he determined that the imported articles constituted entireties. Plaintiff has not argued otherwise in its brief—or indeed raised the entirety issue, and we therefore pretermit the question.