(C.D. 3981)

FONTANA HOLLYWOOD CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 19, 1970)

*Barnes, Richardson & Colburn* (*Rufus E. Jarman, Jr.,* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Robert T. Richardson* and *Herbert T. Posner,* trial attorneys), for the defendant.

LANDIS, Judge: This protest involves the importation, from Italy into the port of New York in March 1967, of long-neck gallon bottles filled with chianti wine. The necks of the bottles are three feet in height and the overall bottles are four feet tall. No question is raised as to the classification of the wine, as only the duty on the bottles is in issue.

Customs officials classified the bottles separately from their contents under item 546.35, Tariff Schedules of the United States [hereinafter referred to as TSUS], and they were assessed with a duty of 25.5 per centum ad valorem.

Plaintiff contends principally that the bottles should not be separately dutiable. Alternatively, in the event the bottles are found to be separately dutiable, plaintiff contends that such bottles are more properly classifiable as containers of glass chiefly used for packing, transporting, or marketing merchandise under TSUS item 545.27 and accordingly should have been assessed with duty at 0.4 cent per pound.

The entire shipment of merchandise is described in the official papers in evidence (R. 3), as "Frescobaldi Chianti Wine" contained in bottles, further described therein as quart long-neck cammellini bottles; gallon long-neck cammelloni bottles; quart ice decanter containers, and 24-ounce bottles.

In liquidating the entry for tariff purposes, customs classified the wine content in the various bottles or containers as dutiable under TSUS item 167.30. At the same time customs made certain findings, necessary to the tariff treatment of containers or holders for imported merchandise, in this case the bottles and decanters, under TSUS General Headnote and Rule of Interpretation 6. This protest, as we have already noted, is limited to the customs tariff treatment of the gallon cammelloni bottles incident to the contrasting findings it made as to the various bottles under General Headnote 6.

Following the prescription in General Headnote 6, customs found that the quart-size cammellini bottles and 24-ounce bottles were not subject to separate treatment as imported articles under General Headnote 6(b)(i), exempting from such treatment the "usual or ordinary types of shipping or transportation containers or holders [for wine] * * * not designed for, or capable of, reuse, and containers of usual types ordinarily sold at retail with their contents". When it came to the gallon-size cammelloni bottles and so-called ice decanters, customs found that, for tariff purposes, they were unusual containers subject to duty as imported articles, separate and distinct from their contents, under General Headnote 6(b)(iii), and assessed them with duty under TSUS item 546.35.

Plaintiff does not dispute the classification of the wine, the quart-size cammellini bottles, or the 24-ounce bottles, or, we might add, the separate tariff treatment of the ice decanters. Its protest here, in effect, principally claims that the gallon cammelloni bottles are usual and ordinary containers, the same as the quart cammellini bottles, within the purview of General Headnote 6(b)(i).

Plaintiff's claims, with respect to the gallon cammelloni bottles, bring before us the following provisions of TSUS:

GENERAL HEADNOTES AND RULES OF INTERPRETATION

\*       \*       \*       \*       \*       \*       \*

6. Containers or Holders for Imported Merchandise. For the purposes of the tariff schedules, containers or holders are subject to tariff treatment as follows:

(a) Imported Empty: Containers or holders if imported empty are subject to tariff treatment as imported articles and as such are subject to duty unless they are within the purview of a provision which specifically exempts them from duty.

(b) Not Imported Empty: Containers or holders if imported containing or holding articles are subject to tariff treatment as follows:

(i) The usual or ordinary types of shipping or transportation containers or holders, if not designed for, or capable of, reuse, and containers of usual types ordinarily sold at retail with their contents, are not subject to treatment as imported articles. Their cost, however, is, under section 402 or section 402a of the tariff act, a part of the value of their contents and if their contents are subject to an ad valorem rate of duty such containers or holders are, in effect, dutiable at the same rate as their contents, except that their cost is deductible from dutiable value upon submission of satisfactory proof that they are products of the United States which are being returned without having been advanced in value or improved in condition by any means while abroad.

(ii) The usual or ordinary types of shipping or transportation containers or holders, if designed for, or capable of, reuse, are subject to treatment as imported articles separate and distinct from their contents.

Such holders or containers are not part of the dutiable value of their contents and are separately subject to duty upon each and every importation into the customs territory of the United States unless within the scope of a provision specifically exempting them from duty.

(iii) In the absence of context which requires otherwise, all other containers or holders are subject to the same treatment as specified in (ii) above for usual or ordinary types of shipping or transportation containers or holders designed for, or capable of, reuse.

Schedule 5, part 3, subpart C:

Containers (except ampoules) chiefly used for the packing, transporting, or marketing of merchandise, and containers chiefly used for home canning and preserving, all the foregoing, of glass, with or without their closures and whether or not coated with plastic materials:

\*   \*   \*   \*   \*   \*   \*

Other:

\*   \*   \*   \*   \*   \*   \*

545.27        Holding over 1 pint_____     0.4¢ per lb.

\*   \*   \*   \*   \*   \*   \*

Articles chiefly used in the household or elsewhere for preparing, serving, or storing food or beverages, or food or beverage ingredients; smokers' articles, household articles, and art and ornamental articles, all the foregoing not specially provided for:

\*   \*   \*   \*   \*   \*   \*

546.35        Glassware, other than the foregoing, colored prior to solidification, and characterized by random distribution of numerous bubbles, seeds, or stones, throughout the mass of the glass _____    25.5% ad val.

Both sides have filed briefs. Before weighing the trial record made at New York, it is necessary to clarify what plaintiff's brief calls the "thrust" of General Headnote 6. While General Headnote 6 speaks, for the most part, directly to the usual or ordinary types of shipping or transportation containers or holders for imported merchandise, we do not agree with plaintiff that this has necessarily changed the thrust

of the law from what it was in section 504 of the Tariff Act of 1930, covering so-called "unusual" containers, and specifying the separate treatment to be given "any unusual material, article, or form designed for use otherwise than in the bona fide transportation", when used for covering or holding imported merchandise. As defendant says, and this court has recently stated, General Headnote 6(b)(iii), under which customs officially noted the gallon cammelloni bottles separately dutiable, "merely reenacted in substance the provisions of section 504 of the Tariff Act of 1930." *The Spesco Corporation* v. *United States*, 62 Cust. Ct. 297, C.D. 3749 (1969). The presumption of law with respect to the customs classification of the gallon-size cammelloni, *F. H. Kaysing* v. *United States*, 49 CCPA 69, C.A.D. 798 (1962), is, therefore, that they are unusual bottles, and not the usual types of containers used to transport or hold wine, or of the usual type in which wine is sold at retail. It is in this context that we first weigh the proofs of record.

On trial, three witnesses testified for the plaintiff. Defendant, we note, made one of such witnesses, Mr. Ben Tobman, its own witness for purposes of defendant's case. A representative sample of the quart cammellini bottle containing wine (exhibit 1), and the gallon cammelloni bottle, emptied of wine (exhibit 2), are in evidence. The form of the quart and gallon bottles are essentially the same. Both are green tinted bottles with a conical bottom part encased in raffia, and feature long necks. Although the conical bottom part holds most of the wine, the long neck, as we observe in the quart cammellini bottle, also holds some wine. The elongated tube-like neck of the quart cammellini and gallon cammelloni is what makes them strikingly different. The long-neck of the quart camellini extends about one foot from where it joins the conical bottom part of the bottle, which stands twenty inches overall. The same form but much larger neck of the gallon cammelloni extends three feet from where it joins the conical bottom part of the bottle, which stands four feet overall.

> The Italians have given * * * [the bottles] the name of "cammelli." And then they have an ending, a diminutive ending, for the little one, which is "ini," making it "cammellini," and "oni," which increases the size, and that would make it "cammelloni." [R. 12.]

The record establishes that the raffia casing, which we would say also dresses up the bottle, offers some protection to the conical glass form and has a woven base without which the bottle could not stand.

Photographs, illustrative of the various size bottles used to bottle chianti wine, all with conical bottoms encased in straw or raffia, but with comparatively shorter necks than even the quart-size cammellini

bottle (exhibit 1), round out plaintiff's evidence. (Exhibits 3, 4, 5.) Defendant introduced in evidence page 96A of the March 1967 metropolitan edition of "New York's Foremost Liquor, Wine and Beer Publication", entitled "Beverage Media" (exhibit A), along with the box or carton in which the gallon cammelloni bottle was brought to court, characterized by defendant's counsel, without objection, "as the container in which the bottle is normally sold." (R. 43, exhibit B, missing of record.)

As plaintiff points out, the phrase in General Headnote 6(b)(ii) subjecting containers "designed for, or capable of, reuse", to separate tariff treatment as imported articles, is used in the practical commercial sense of reuse for transportation purposes, and not incidental or fugitive uses.[1] We also note, with plaintiff, customs recognition of the fact that the general class of bottles in which wine is customarily imported is not designed for or capable of reuse in the practical commercial sense.[2] Conceding, as we believe customs found, that the gallon cammelloni bottle is not designed or capable of reuse in the practical commercial sense, we find the evidence insufficient to overcome the presumption that the gallon cammelloni is otherwise an unusual bottle under General Headnote 6(b)(iii), albeit sold at retail with the wine content. It stands four feet tall. There is not a bit of testimony that bottles four feet tall are usual containers for holding, transporting, or selling wine at retail. As our appeals court has said:

> * * * whether * * * articles are unusual * * * is a question of fact, and in the final analysis the query must be whether the evidence presented by the importer was sufficient *prima facie* to overcome the presumption of correctness which attaches to the * * * [customs] finding in that regard. [*United States* v. *W. J. Mulligan & Co.*, 29 CCPA 117, 122, C.A.D. 179 (1941).]

The sum of the testimony in this case establishes that the gallon cammelloni bottles are of the family of bottles known in Italy as "fiasco", meaning in English "flasks", of which there are literally hundreds of varieties. Chianti wine is also imported in straight sided "Bordeaux" bottles and in fancy chinaware bottles or odd-shaped bottles. Wine bottled in a "Bordeaux" bottle is preferred to wine bottled in a flask-type bottle because the wine matures better and lasts longer in the "Bordeaux" bottle. The mass of wine in a flask-type bottle is not uniform and the wine in the neck, in the middle, and at the bottom of the bottle mature differently. One can readily understand the testimony that the four-foot cammelloni bottle will not pour wine conveniently into a glass and the wine is best emptied into a pitcher first. Cammellini and

---

[1] Tariff Classification Study, Seventh Supplemental Report, page 99.
[2] 98 Treas. Dec. 580, T.D. 56018(1).

cammelloni bottles are not imported empty and both are sold to wholesalers to help display and sell chianti wine. The "flamboyant" form (R. 18) of the cammelloni bottle helps market the wine. None of the witnesses had ever seen the cammelloni bottle displayed empty or knew of a use for the cammelloni bottle after the wine content was consumed. Wine in cammelloni size bottles is sold mostly to consumers, and the retail price of a cammelloni bottle of wine is substantially higher than that for a gallon of wine in a more standard short-neck type of gallon flask. One witness called the cammelloni bottle a "fun bottle". (R. 48.)

The above evidence is not, in our opinion, sufficient to negative the customs finding that the gallon cammelloni bottles are unusual. Indeed some of the facts testified to, indicate that in terms of some of the factors and elements, quoted with approval by our court of appeals in *United States* v. *W. J. Mulligan & Co.*, 29 CCPA 117, 122, C.A.D. 179 (1941), as pertinent, they are unusual. Quoting from earlier decisions, our appeals court in *Mulligan* stated:

> But if it appears that they [containers] are unusual and designed for some substantial, material, or valuable use other than that of holding or containing the merchandise while being therein transported, they are then subject to the additional duty. The transportation referred to in the section may include placing the same in the hands of the retailer, or in some cases in the hands of the consumer, and an incidental use of the covering or container, if one exists, may be enjoyed by the retailer in selling the particular merchandise so transported. The value of the alleged unusual container or covering, as compared with that of its contents, may be important in determining whether it is or is not separately dutiable. If it appears that after its use as a holder or container of the merchandise imported therein it becomes a subject of trade and commerce here, or if it is generally devoted to other uses, its adaptability to which are an important inducement to the consumer to purchase the same with its contents, or if it is sold with its contents and materially enhances the value thereof to the consumer, any such facts may warrant its separate duty assessment under the section. * * *

Plaintiff has superficially satisfied some of the elements for tariff treatment under General Headnote 6(b)(i). The gallon cammelloni four-foot bottle, to be sure, is a type of shipping or transportation container. It is not designed for, or capable of reuse, in the commercial sense. It is a container sold at retail with its contents. The rub is that it is presumptively an unusual type of container for wine. Plaintiff has not shown that, in the general trade of wine, four-foot overall bottles, with a three-foot neck, are a usual or ordinary type of bottle, used to ship, transport, or sell wine at retail. We do not read the term "usual" in General Headnote 6 to mean that which is "usual" to one's self,

but "usual" in the sense that it accords with ordinary and common practice in the trade and marketing of wine.

We next come to plaintiff's alternative claim that, if separately dutiable, as customs found, the cammelloni bottle should be classified under TSUS item 545.27 as other containers chiefly used for packing, transporting, or marketing of merchandise, rather than under the superior heading to TSUS item 546.35 classifying, *inter alia*, household articles. The tariff commission report on TSUS item 545.27 states that:

> * * * The proposed provisions for "other" containers [TSUS items 545.21 through 545.27] embrace the bottles and jars commonly used for the packing and transportation of merchandise and are substantially unchanged from the existing provisions in paragraph 217. * * * [Tariff Classification Study, Schedule 5, page 139.]

The provision in paragraph 217 of the 1930 Act is limited to containers "suitable for use and of the character ordinarily employed for the holding or transportation of merchandise". 19 U.S.C.A., section 1001 (paragraph 217).

Defendant would have us exclude these gallon cammelloni bottles from classification under TSUS 545.27 on two grounds. The first ground, that cammelloni bottles cannot, at the same time, be "unusual" and "commonly" (a term taken from the Tariff Classification Study, *supra*) used for the packing and transportation of wine, introduces into the classifying law an ambiguity that is not there. TSUS item 545.27 does not address itself to containers "commonly" used for the packing and transportation of merchandise as it is put in the Tariff Classification Study, *supra*, but to containers that are "chiefly used" for the packing, transporting, or marketing of merchandise. Legislative history, such as the Tariff Classification Study, which defendant relies on, may never be used to introduce ambiguity into a statute where there is none. *F. L. Smidth & Company* v. *United States*, 56 CCPA 77, C.A.D. 958 (1969). Defendant's contention would also abort the rule that a tariff classification controlled by use, as in TSUS 545.27 and, incidentally, the household articles classified under TSUS item 546.35, *William Adams, Inc.* v. *United States*, 56 Cust. Ct. 429, 437, C.D. 2670 (1966), "is * * * determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined".[3]

Defendant, as a second ground, and without citation to any authority, would remind us that "unusual" containers under section 504 of

---

[3] TSUS General Headnotes and Rules of Interpretation 10(e)(i).

the 1930 Act, the substance of which, as we have noted, was carried over into General Headnote 6(b)(iii), *supra*, were in no event classifiable under paragraph 217 of the 1930 Act, predecessor to TSUS item 545.27. Although there is some support for what defendant says, *Asturr Trading Co.* v. *United States*, 72 Treas. Dec. 419, T.D. 49203 (1937), that point was left open in *United States* v. *W. J. Mulligan & Co., supra*. Be that as it may, we are of the opinion that the cut of General Headnote 6, *supra*, and TSUS item 545.27, *supra*, is so materially different from section 504 and paragraph 217 in the 1930 Act as to require a different result from that suggested by defendant. Cf. *Victor England Agencies, Inc.* v. *United States*, 63 Cust. Ct. 180, C.D. 3894 (1969).

It may be, as defendant argues, that an "unusual" container under section 504, defined as an article used for covering or holding imported merchandise of "any unusual material * * * or form designed for use otherwise than in the bona fide transportation of such merchandise to the United States", could not consistently, and at the same time, be "of the character ordinarily [or commonly] employed for the holding or transportation of merchandise" under paragraph 217. And General Headnote 6(b)(iii) requiring separate tariff treatment of "all other containers or holders" as opposed to the usual or ordinary types of shipping or transportation containers or holders, is, no doubt, broad enough to include containers of a form designed otherwise than in the bona fide transportation of wine to the United States and, therefore, of a kind not ordinarily employed for the holding or transportation of wine. But, to repeat what we said earlier, TSUS item 545.27 does not classify containers ordinarily or commonly employed for the holding or transportation of merchandise (as did paragraph 217). What it does classify are *containers chiefly used for the packing, transporting, or marketing of merchandise*. The fact that a container is chiefly used for the packing, transportation, or marketing of merchandise is not inconsistent with its not being a bona fide container for transportation, or, if you will "unusual", that is, of a kind not usually or ordinarily employed to ship, transport, or market merchandise. Customs we assume, can find containers "unusual" on any number of grounds under General Headnote 6(b)(iii). When customs fails to disclose on what ground it so found, as it has here, there is no presumption that the ground on which it found these cammelloni bottles "unusual" is inimicable to their chief use for packing, transporting, and marketing wine.

The tariff term "household articles" is also a use provision limited to articles chiefly or principally used in the household. *William Adams, Inc.* v. *United States, supra*. While the customs classification of these

gallon cammelloni bottles under TSUS item 546.35, as household articles, is also presumptively correct, the presumption is not evidence and cannot be weighed against the evidence of plaintiff. *United States v. Ignaz Strauss & Co., Inc.*, 37 CCPA 48, C.A.D. 418 (1949). The weight of the evidence in this record establishes that the gallon cammelloni bottles are chiefly used to transport and market the imported wine content. There is no evidence to the contrary. Since the presumption that the gallon cammelloni bottles are "unusual" requires that they receive separate tariff treatment as imported articles under General Headnote 6(b)·(iii), they are, as plaintiff claims, dutiable under TSUS item 545.27 as containers chiefly used to pack, transport, and market wine.

The protest claim under TSUS item 545.27 is sustained. The protest claim under TSUS General Headnote 6(b)(i) is overruled.

Judgment will be entered accordingly.