**DAVIES, TURNER & CO.**

v.

**UNITED STATES.**

**C.D. 3037; Protest 64/25427–95158.**

United States Customs Court,
First Division.
June 20, 1967.

Allerton deC. Tompkins, New York City, for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Arthur H. Steinberg, New York City, Trial Atty.), for defendant.

Before OLIVER, WATSON, and BECKWORTH, Judges.

OLIVER, Judge:

This protest concerns an importation of merchandise described on the invoice as "Rubber Shrunken Heads without bell" and classified by the collector of customs at the port of Philadelphia as practical joke articles under item 737.65 of the Tariff Schedules of the United States at a rate of 20 per centum ad valorem.

By its original protest, plaintiff claims that these articles are properly subject to duty under item 774.25 of said tariff schedules as articles of natural rubber and, via amendment thereto, has added a claim under item 774.60 which provides for all other articles of rubber or plastics, not specially provided for.

The pertinent provisions of the TSUS appear as follows:

Item 737.65:

    Magic tricks, and practical joke articles ........ 20% ad val.

Item 774.25:

    Articles not specially provided for, of rubber or
        plastics:
            Of natural rubber ...................... 12.5% ad val.

Item 774.60:

    Articles not specially provided for, of rubber or
        plastics:
            Other ............................... 17% ad val.

Mr. David W. Ring, identified as president, general manager, and purchaser for the Larami Corporation, the actual importer in this case, was the only witness called to testify. The Larami Corporation is engaged in the importation

of children's toys, novelties, and party goods as well as practical joke items, and sales cover the entire United States.

Plaintiff's exhibit 1 was received into evidence as a representative sample of the imported merchandise. It consists of a hollow rubber form depicting a black miniature head measuring about 2 inches in height by about 1½ inches in width. Long strands of black simulated hair are attached to and flow from the top portion of the head.

The witness referred to novelty items as being unique and unusual articles or different from what is normally found on the market, while the party favor line consists of such things as "blowouts, paper hats, cups, and items of that sort." In response to a question from counsel as to what he meant by practical joke items, he answered, "well, items that have, primarily, the element of surprise or startling the one who the joke is played on." He gave as examples a camera where something pops out or bitter tasting chewing gum. It was his opinion that the imported items were novelties rather than practical joke articles since they have no element of surprise or hidden feature.

At the close of the testimony, the trial judge, upon plaintiff's motion and over the defendant's objection, ordered exhibit 1 sent to the United States Customs Laboratory at Philadelphia for analysis to determine the component materials. It was further ruled that it be made a part of the court file in this case for whatever value it might have on the issue of component material of chief value.

The term "practical joke articles" is new language appearing for the first time in the 1963 Tariff Schedules of the United States and there exists, therefore, no prior judicial interpretation as to its nature or scope. Lacking a claimed commercial designation, the commonly understood meaning of the words will have effect, and a primary source for such meaning is the standard lexicons of our language. Atlantic Aluminum & Metal Distributors, Inc. v. United States, 47 CCPA 88, C.A.D. 735. The following definitions express the usual variations in which the term "practical joke" is defined:

Webster's Third New International Dictionary of the English Language, unabridged (1966):

practical joke, `n: a joke whose humor stems from the tricking or abuse of an individual placed somehow at a disadvantage.

Funk and Wagnalls Standard Dictionary, international edition (1963):

practical joke. a joke involving action instead of wit or words; a prank or trick.

Webster's New International Dictionary, second edition (1934):

practical joke—a joke put in practice, the fun consisting in what is done rather than what is said; esp., a trick played on a person, usually involving some roughness.

The salient characteristics of a practical joke appear to be: (1) action or the doing of something and (2) the tricking or placing at some disadvantage the recipient of the action. It would seem to follow, therefore, that a practical joke article is one used to effectuate a trick or to place a recipient at a humorous disadvantage.

Plaintiff contends that the absence of hidden or surprise features on exhibit 1 prevent its classification as a practical joke article. We cannot agree to such a narrow concept of the term. Depending upon the manner and circumstances under which it is used, plaintiff's exhibit 1 might serve prankish purposes as well as articles that rely upon unseen elements. As pointed out in defendant's brief, the well-known fake spider or bug trick relies primarily upon the method of use rather than the presence of hidden features.

In its 1960 study [1] printed for the use of Congress, the United States Tariff Commission, in dealing with the newly

1. Tariff Classification Study Explanatory and Background Materials, schedule 7, part 5.

proposed language of item 737.65, commented as follows:

Item 737.65 is a new provision for magic tricks and practical joke articles. This embraces a large category of miscellaneous novelties which now are dutiable, according to component material of chief value, if they are deemed to be for the amusement of persons over the age of puberty, or under the "basket" provision for toys in paragraph 1513 if they are deemed chiefly used for the amusement of children. These are usually articles of little value which frequently are made of more than one material. For the type of trade involved it is unduly burdensome for customs officials to have to determine whether or not these novelties are to be used chiefly by children or by other persons and to determine the component material of chief value. These novelty articles have therefore been brought together under a single provision at the rate of duty now applicable to such articles in paragraph 1513. There are not sufficient imports at any one rate of duty upon which to base a proposed duty. Inasmuch as these articles are so patently related to toys, the rate applicable to toys, not specially provided for, is proposed for the item. No opposition against the proposal was expressed by importers.

With the adoption of a new definition for the term "toy" [2] in the TSUS, much of the problem theretofore present in classifying what the commission referred to as "a large category of miscellaneous novelties" was alleviated. Suffice it to say, however, that there is nothing in this source of legislative background or in any other in which we have researched that would tend to support the interpretation of the involved term as advanced by the plaintiff herein.

We find ourselves in agreement with the position of the Government in this case that the term "practical joke articles" is a provision governed by use and, as such, the provisions of General Interpretative Rule 10(e) (i) of the General Headnotes and Rules of the Tariff Schedules of the United States make chief use the controlling factor in classification thereunder.[3] Based upon the presumption in law that the collector has found all necessary facts to support his classification, it was incumbent upon the plaintiff in this case to negate the attending presumption that the imported items are chiefly used as practical joke articles.

The record herein is completely silent with respect to use and, therefore, plaintiff's burden has not been met. While this item may not reflect the court's image of a practical joke article, its incapability for such use, as mentioned, supra, is not obvious, and judicial feelings are no substitute for record proof in such a case. L. Tobert Co., Inc., et al. v. United States, 41 CCPA 161, C.A.D. 544.

Since the language under which the merchandise was classified is obviously more specific than the provisions under either of plaintiff's claims, and no statement to the contrary has been made, we need not take up the question of sufficiency of proof concerning the component material of chief value as covered in the briefs of both parties. Plaintiff having failed to show the collector's classification to be erroneous, its protest is, therefore, overruled. Judgment will issue accordingly.

---

2. Schedule 7, part 5, subpart E, headnote 2.
For the purposes of the tariff schedules a "toy" is any article chiefly used for the amusement of children or adults.

3. General Interpretative Rule 10(e) (i) reads:
(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i. e., the use which exceeds all other uses (if any) combined;