(C.D. 3061)

Wilson's Customs Clearance, Inc. v. United States

United States Customs Court, First Division

(Decided July 19, 1967)

*Gurson L. Schweller* for the plaintiff.

*Carl Eardley*, Acting Assistant Attorney General (*Glenn E. Harris* and *Andrew P. Vance*), for the defendant.

Before WATSON and BECKWORTH, Judges, and OLIVER, Senior Judge

OLIVER, Judge: The cases at bar which were consolidated at the time of trial relate to importations of articles invoiced as "papier mache dogs" or "papier mache ware." Duty was assessed at the rate of 35 per centum ad valorem under item 737.40 of the Tariff Schedules of the United States. Plaintiff claims that the imported articles are properly classifiable under item 256.75 of said tariff schedules at the rate of 8.5 per centum ad valorem as articles of papier mache. Various other claims mentioned in the protests were not pressed at trial or in the plaintiff's brief and are deemed abandoned. The official papers accompanying the protests were received into evidence without being marked.

The pertinent statutory provisions appear as follows:

Schedule 7, part 5, subpart E, headnotes 1 and 2:

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, but the provisions of this subpart do not apply to—

    \*        \*        \*        \*        \*        \*        \*

2. For the purposes of the tariff schedules, a *"toy"* is any article chiefly used for the amusement of children or adults.

Item 737.40:

Toy figures of animate objects (except dolls):
    Not having a spring mechanism:

\*     \*     \*     \*     \*     \*     \*

    Not stuffed:

\*     \*     \*     \*     \*     \*     \*

       Other_____35% ad val.

Schedule 2, part 4, subpart D, headnote 1:

1. This subpart covers articles of pulp, of papier-mache, of paper, or of paperboard, not provided for elsewhere in this schedule or in schedule 7.

Item 256.75:

Articles, of pulp, of papier-mâché, of paper, or of paperboard, or of any combination thereof, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

      Of papier-mâché_____8.5% ad val.

The imported merchandise as represented by plaintiff's exhibits 1 and 2 was accurately described in the Government's brief as follows:

Each exhibit consists of a dog-like figure, approximately 10 inches long, with a detachable head that is inserted into an opening in the neck portion of the body by means of a hook and an eye that are attached to the outside of the head and the inside of the neck respectively. There is a metal weight attached to the head, and a collar around the neck. Plastic eyes and nose are attached to the head of each figure. The exhibits have a suede-like finish, Plaintiff's Illustrative Exhibit 1 being black and gray, while Plaintiff's Illustrative Exhibit 2 is brown. When the head of the figure is subjected to a force acting against it, the resulting movement, corresponding to the hook swinging through the eye, is that of a dog nodding its head.

Plaintiff's first witness was Mr. Theodore Royffe, owner and sole employee of Royffe Continental, Inc., the actual importer in this case.[1] He testified that pursuant to negotiations with Korlis, Ltd., of Englewood, New Jersey, he went to Japan and arranged to have the instant merchandise manufactured. The entries involved cover three kinds of dogs, shepherd, dachshund, and cocker spaniel, and they are all produced by the same Japanese manufacturer. Exhibit 1 represents a shepherd and exhibit 2 a cocker spaniel.

The witness further stated that he sold the items exclusively to automotive stores or wholesalers who sell to automotive outlets, such as Pep Boys in Philadelphia, Western Tire in Chicago, E.J.B. Products in New York, and Korlis, Ltd., in New Jersey. He had seen this mer-

---

[1] At the outset of the trial, the Government moved and the court granted its motion to quash a subpoena *duces tecum* served the day before trial on the Regional Commissioner of Customs in New York to produce *inter alia* certain entry papers covering importations of similar items by a New Jersey importer.

chandise, and similar merchandise, used on the inside rear of automobiles, mounted on the back shelf and plainly visible. He had never seen it used by a child and thought the presence of the hook to hold the head on, as well as the "toxic" nature of the material used, made it dangerous for youngsters.

On cross-examination, the witness testified that, besides papier mache, the items contained a weight of lead, some plastic, and cardboard.

Mr. Eric J. Browner of E.J.B. Products testified as plaintiff's second witness. He stated that his business was that of a general importer and that he had purchased items represented by exhibits 1 and 2 from Royffe Continental, Inc. He sold 120 dozen of them to Times Square Automotive which he characterized as a store dealing in supplies, gadgets, and accessories for automobiles. He also remembered selling them to two automotive jobbers, one in Providence and the other in Los Angeles. He had never sold them to toy stores. On many occasions, he had observed similar articles displayed in the rear of cars and he had never seen them any place else.

Plaintiff argues that the fact that these imports have been sold exclusively to automotive outlets and never to toy stores and that the witnesses Royffe and Browner observed them in use only as automobile ornaments is sufficient to show they are not articles chiefly used to amuse children or adults. The Government, on the other hand, argues that plaintiff's evidence is too limited to show the articles are not chiefly used by children, much less by adults, and that, in any event, plaintiff has failed to establish its claimed classification on the issue of chief value.

With the advent of the new Tariff Schedules of the United States, the definition of the term "toy" was changed to include articles used by adults. Under the definition appearing in paragraph 1513 of the Tariff Act of 1930, it was necessary to determine two things, namely, by whom is the article used and for what purpose. *United States* v. *Calhoun, Robbins, & Co.*, 21 CCPA 167, T.D. 46495. Although the first of these two determinations is now eliminated, the second subsists. With respect to this second determination, it had always been held that not everything a child used would be a toy but that the character of amusement involved was that derived from an item which is essentially a plaything. *United States* v. *Louis Wolf & Co.*, 26 CCPA 243, C.A.D. 23; *F. F. G. Harper Co.* v. *United States*, 63 Treas. Dec. 948, T.D. 46423. It follows, therefore, that Congress has broadened the toy provision to include articles that may be described as essentially playthings for adults. Apropos of this is the following observation of Mr. Russell N. Shewmaker, Assistant General Counsel to the United States Tariff Commission, made during a hearing conducted by the Tariff

Commission concerning the revised scope of the toy provision in the new schedules (1960 Tariff Classification Study, Explanatory and Background Materials, schedule 7, page 682) :

There is also another factor which I think is important here as we work with this provision. There has been in recent years a growth in the leisure time activities of adults. The adults are finding more and more time to play and to amuse themselves with various pursuits and, as Mr. Lerch said, they may be acting like a child sometimes when they are doing it, but nevertheless they are being amused. We were trying to help the tariff to go with the age.

In the recently decided case of *Fred Bronner Corp.* v. *United States*, 57 Cust. Ct. 428, C.D. 2832, we had occasion to review a significant line of cases distinguishing between a toy and articles of ornamentation, decoration, or display. The distinction exists regardless of the age of the users. In the instant case, the sole testimony offered is to the effect that these items, similar to those previously imported by others, have found but one use and that is as ornaments or objects of display for the rear window of automobiles. Such testimony, however, as pointed out by defendant, is limited to local observations in this city. Moreover, as merchants or executives commercially handling these items, the witnesses' testimony has limited effect since they mostly sell to other and distant distributors, and they did not disclose a very intimate knowledge of ultimate distribution and sale. *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120; *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 103, C.D. 2617.

Nevertheless, as is especially true in toy cases, the sample merchandise can offer potent evidence on the question of use, and when in harmony with the other evidence of record, can permit the drawing of inferences as to use nationally. *Fred Bronner Corp., supra.* There is precedent under the two previous tariff acts for viewing sample evidence as sufficiently persuasive to rebut the presumption of correctness on a toy classification and to shift the burden to the defendant. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995; *United States* v. *Borgfeldt & Co.*, 13 Ct. Cust. Appls. 620, T.D. 41461.

We are inclined to the view that the present case presents one of those occasions where the sample merchandise itself supplies the necessary persuasiveness to carry the issue for the plaintiff, at least when the presumptive correctness of the collector's classification stands unsupported. The presence of a sharp and rather easily exposed hook renders the merchandise patently unusable by children of tender years. As for those over puberty, the articles represent essentially passive, uncomical, almost nonmanipulatable, yet finely finished replicas of well-known dog species. As such they are eminently suitable for purposes of display or ornamentation, no matter where that may be, and substantially incapable of functioning as objects of play or amusement

in any normal or intelligent use. It is not a question of their appearing more suitable for one use than another as was the case in *Fred Bronner Corp.*, *supra*, but of their offering mute testimony of their substantial incapability of use as classified. This type of potent evidence when in harmony with all other evidence presented satisfies the court that a shift in burden on this issue has taken place.

To discharge its two-fold burden in this classification case, it was for the plaintiff to show that the merchandise is properly dutiable as claimed, that is, as articles of papier mache under item 256.75. Rule 9 (f) (i) of the General Headnotes and Rules of Interpretation preceding the new tariff schedules provides that the term "of" when used to relate a material to articles under a tariff provision means articles wholly or in chief value of that material. In conjunction with this, General Interpretative Rule 10 (f) provides:

an article is in chief value of a material if such material exceeds in value each other single component material of the article;

Aside from the testimony of the importer that he had observed the manufacture of these articles in Japan, the record here is completely lacking in evidence on this issue of component material of chief value. Unlike the efficacy of the sample on the issue of use, the presence of a rather substantial amount of lead, as well as unknown amounts of nonpaper materials, renders it unsuitable as a competent source on this value issue. Compare *John S. Connor, Inc.* v. *United States*, 54 Cust. Ct. 213, C.D. 2536. In this situation, therefore, it was incumbent upon the plaintiff to show the costs of the different components used in producing these articles.

It is well settled that the proper method of determining the component material of chief value of an article is to ascertain the costs of the separate parts or component materials to the manufacturer at the time they are ready to be assembled or combined into the article. [*Commercial Adolfo S. Pagan, Inc., et al.* v. *United States*, 48 Cust. Ct. 210, 216, C.D. 2337, and cases cited therein.]

Having failed to offer the proofs required to sustain its claim, we have no alternative but to overrule plaintiff's protests without affirming the collector's classification. Judgment will issue accordingly.