(C.D. 3930)

TOPPS CHEWING GUM, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 24, 1969)

*Alan S. Hays* (*Cadwalader, Wickersham & Taft* and *John Boyer* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

MALETZ, Judge: These three protests which were consolidated for trial involve the question as to the proper tariff classification of certain round metal buttons approximately two inches in diameter, each with a metal pin affixed in the back, that were imported from Japan and entered at the port of New York. On the front of each such button appears a humorous design and/or saying such as "I FOUND MY IDEAL—ME"; "SUPPORT SLOPPINESS"; etc.

The imported merchandise was classified by the government under item 737.90 of the Tariff Schedules of the United States as toys not specially provided for, and duty was assessed at the rate of 35 percent ad valorem. Plaintiff claims that this classification is erroneous and interposes alternative claims for classification under:

(1) Item 745.08—Buttons of metal, other, valued not over 20 cents a dozen, dutiable at the rate of 10 percent ad valorem.

(2) Item 740.30—Jewelry and objects of personal adornment, dutiable at the rate of 18 percent ad valorem.

(3) Item 657.15—Articles of iron and steel not specially provided for of tin plate, dutiable at the rate of 12 percent ad valorem.

(4) Item 657.20—Articles of iron and steel not specially provided for, other, dutiable at the rate of 19 percent ad valorem.

Plaintiff contends that the imported articles are not chiefly used as playthings and therefore are not classifiable under the toy provisions of the tariff schedules. Defendant argues, on the other hand, that the testimony it presented supports the government's classification as toys and rebuts plaintiff's evidence. We hold that the government's classification of the articles as toys is erroneous and that they are properly classified under item 745.08 as buttons, dutiable at the rate of 10 percent ad valorem.

Quoted below are the pertinent statutory provisions:
Tariff Schedules of the United States:

General Headnotes and Rules of Interpretation

\*　　\*　　\*　　\*　　\*　　\*　　\*

10. General Interpretative Rules. For the purposes of these schedules—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of

importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

\* \* \* \* \* \* \*

Classified under:

Schedule 7, Part 5, Subpart E headnotes:

1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules \* \* \*

\* \* \* \* \* \* \*

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults. [Emphasis in original.]

\* \* \* \* \* \* \*

Toys, and parts of toys, not specially provided for:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 737.90 | Other _____ | 35% ad val. |

Claimed under:

Schedule 7, Part 6, Subpart A

\* \* \* \* \* \* \*

Jewelry and other objects of personal adornment not provided for in the foregoing provisions of this part (except articles excluded by headnote 3 of this part), and parts thereof:

| | | |
|---|---|---|
| 740.30 | Valued not over 20 cents per dozen pieces or parts_____ | 18% ad val. |

Schedule 7, Part 7, Subpart A

\* \* \* \* \* \* \*

Buttons:
Of metal:

\* \* \* \* \* \* \*

Other [not embossed with a design, pattern, or lettering]:

| | | |
|---|---|---|
| 745.08 | Valued not over 20 cents per dozen _____ | 10% ad val. |

Schedule 6, Part 3, Subpart G

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | * | * | * | * | * | * | * |

Articles of iron or steel, not coated or plated with precious metal:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | * | * | * | * | * | * | * |

Other articles:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | * | * | * | * | * | * | * |

657.20      Other _____     19% ad val.

[for Protest Nos. 66/56775 and 67/68195 only]

Articles of iron or steel, not coated or plated with precious metal:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | * | * | * | * | * | * | * |

Other articles:

657.15      Of tin plate_____     12% ad val.

[for Protest No. 66/68044]

Other:

Schedule 7, Part 6, Subpart A headnotes:

1. This subpart covers jewelry and other objects of personal adornment, small articles ordinarily carried in the pocket, in the handbag, or on the person for mere personal convenience, certain religious articles, and certain parts and materials. * * *

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

2. For the purposes of this subpart—

(a) the term "jewelry and other objects of personal adornment" (items 740.05, 740.10, 740.30, 740.35, and 740.37) includes rings, ear-rings and clips, bracelets * * * necklaces, neck chains, watch chains, key chains, brooches, tie pins and clips, collar pins and clips, cuff links, dress-studs, buttons, buckles and slides, medals, military, fraternal and similar emblems and insignia * * * fobs, pendants, hair ornaments * * * and similar objects of personal adornment * * *

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

3. Items 740.30, 740.35 and 740.37 cover articles described in headnote 2(a) of this subpart, except buttons, buckles, and slides, and hair ornaments * * *.

We first consider the legal principles involved. The term "toy" is (as we have seen) defined in the tariff schedules as "any article chiefly used for the amusement of children or adults." However, both under the Tariff Act of 1930 and the tariff schedules not everything that amuses is a toy; to constitute a toy the article must be a plaything. Thus in *Illfelder* v. *United States*, 1 Ct. Cust. Appls. 109, 111, T.D. 31115 (1910), the court stated that "[i]n common speech, and as popularly understood, a toy is essentially a plaything." This was the case, said the court, because there are many things which are not toys

though they serve to amuse. And in *United States* v. *Bernard, Judae & Co.*, 5 Ct. Cust. Appls. 202, 203, T.D. 34328 (1914), the court stated that "an article, however cheap, can not be a toy unless it enters in some manner into the sport or play of children." See also e.g., *United States* v. *Kraemer & Co. et al.*, 5 Ct. Cust. Appls. 294, T.D. 34474 (1914) ; *Fred Bronner Corp.* v. *United States*, 57 Cust. Ct 428, CD. 2832 (1966) ; *United States* v. *Louis Wolf & Co.*, 26 CCPA 243, C.A.D. 23 (1938) ; *F.F.G. Harper Co.* v. *United States*, 63 Treas. Dec. 948, T.D. 46423 (1933).

The legislative history of the Tariff Schedules of the United States confirms this interpretation. Russell L. Shewmaker, then Assistant General Counsel to the U.S. Tariff Commission, at the hearing before the Tariff Commission, cited the definition of "toy" found in Webster's *New Collegiate Dictionary* as "a thing to play with; esp. something made for the amusement of a child or for his use in play." *Tariff Classification Study, Schedule 7*, p. 682. In *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, C.D. 3061 (1967), the court, relying on cases decided before enactment of the tariff schedules, stated (p. 39) :

> With the advent of the new Tariff Schedules of the United States, the definition of the term "toy" was changed to include articles used by adults. Under the definition appearing in paragraph 1513 of the Tariff Act of 1930, it was necessary to determine two things, namely, by whom is the article used and for what purpose. * * * *Although the first of these two determinations is now eliminated, the second subsists. With respect to this second determination, it had always been held that not everything a child used would be a toy but that the character of amusement involved was that derived from an item which is essentially a plaything.* * * * [Emphasis added.]

Turning to the present case, it is evident from an examination of sample importations that they are designed and constructed to be worn rather than played with. Further, the testimony clearly shows that they are chiefly used for wearing. Thus the person who designed the buttons and witnessed their test marketing testified that the children buying the buttons—who were generally between the ages of 9 to 14—would open the package, look at the button, show it to a friend, and then put it on. A psychologist called by plaintiff who observed the use of the buttons in both New York City and Florida and in doing research on the use of the buttons testified that their appeal is to children in the pre-adolescent age group and that when they obtained a button, they read it, smiled or frowned, and then put it on.[1] A psy-

---

[1] The testimony of this psychologist indicates that the behavioral factors motivating use of the buttons were attention-getting—which is the function of adornment—and a way of communication.

chologist called by defendant, who indicated that he had observed the use of the buttons in conducting research throughout the country, testified that he had observed children wearing the buttons on about 100 occasions and had also noticed them on bulletin boards in the home on about 30–40 occasions.[2] A candy store owner who sells the buttons testified that the children either put them in their pocket, pinned them on, or asked someone else to pin them on for them.

In addition, it is evident from the general tenor of the testimony of four children ranging in age from 8 to 13 years old—who were called as defense witnesses—that the buttons are chiefly used for wearing.[3] None of these four children testified that the principal reason for wanting the buttons was to trade them rather than wear them. And none of the four children testified that he or she played with the buttons either actively by manipulating them or by creating a game activity.

In short, the buttons were not constructed to function as playthings and were not used as such. It is quite true that children may get happiness or pleasure from the buttons. Children similarly get happiness or pleasure from watching television or reading comic books. But this scarcely means that television sets and comic books are playthings or toys. For happiness or pleasure is not the equivalent of "amusement" as that word is used in the definition of "toy." In *F. F. G. Harper Co.* v. *United States, supra,* 63 Treas. Dec. at 954, the court, in discussing an analogous issue, concluded that "happiness or pleasure is very far removed from amusement." Thus, the mere fact that some pleasure may be derived from the possession or use of the buttons does not mean that they are toys.

---

[2] Defendant's psychologist also testified that "[a]t any given time the proportion of youngsters who have these buttons [and] who wear their buttons is very small." When asked what the percentage was, he stated that "I think it would be foolhardy to even hazard a guess, but it would certainly be a minority, a significant minority." He also testified that the fact the children purchase the articles in wrappers so they don't know which buttons they are buying suggests that they are not buying a specific message that enables them to express themselves, but that "they are buying a sort of generalized satisfaction, a form of fun and pleasure which is a part of a larger activity that we know kids of this age enjoy doing and which gives them pleasure and fun, namely collecting." The primary reason for such collection activity, he testified, is that it provides pleasure to the child—it's fun to do so. In this context, it was his opinion that the use of these buttons by children was a play activity which he defined as something that gives pleasure in itself. The witness further testified that pleasure is the main reason motivating children's attention-giving to television and comic books, and that such activity is likewise a play activity, albeit a passive rather than an active play activity.

[3] Thus an eight-year-old girl testified that she has between 25–50 buttons; that she has fun choosing which one to wear; that she wears them to school on her dress, coat and pocketbook; and that she wears them for fun. A twelve-year-old boy testified that he wears the buttons to school, and that he sometimes trades his button when he thinks the saying on a friend's button is funnier. A thirteen-year-old boy testified that he wears them to school; that he also puts them on his wall for decorative purposes; and that he trades buttons with his friends to get new ones. Another thirteen-year-old boy testified that he wears the buttons and trades them with friends at school; that he sometimes wears as many as four at a time; that he packs them in packages he mails to friends; and that he decorates his walls with them.

In summary, the evidence in its entirety, buttressed by examination of the sample buttons, impels the conclusion that the articles—designed and chiefly used as they are for wearing—are manifestly not playthings, and hence were erroneously classified as toys.[4]

This brings us to the question of what is the appropriate tariff classification for the imported articles. On this aspect we conclude that the articles, in accordance with plaintiff's first alternative claim, are properly classifiable under item 745.08 of the tariff schedules as metal buttons not embossed, valued not over 20 cents per dozen, and are thus dutiable at 10 percent ad valorem.[5] First the lexicographic authorities make plain that a button may be other than a fastening device. Thus Webster's *Third New International Dictionary of the English Language* (1963 ed. unabridged) gives the following definitions:

> 1a: a disk, ball, or device of other shape having holes or a shank by which it is sewn or secured to an article (as of clothing or upholstery) and that is used as a fastener by passing it through a buttonhole or loop or as a trimming and is made of glass, shell, bone, wood, leather, or cloth. * * * b: *an ornament or badge* of similar shape often of metal *with a stamped design* or of plastic with a *slogan imprinted on the face.* * * * [Emphasis added.]

*Britannica World Language Dictionary* (1963 ed.) defines the term as follows:

> button *n.* 1 A knob or disk, as of bone or metal, which, when forced through a narrow opening, or a buttonhole, fastens one part of a garment to another. 2 Anything resembling a button, as an emblem of membership, usually worn in the lapel, a political emblem on a celluloid disk, etc. * * *

The *Random House Dictionary of the English Language* (1966 ed. unabridged) gives as one meaning of the word "button":

> 2. Anything resembling a button, esp. in being small and round, as any of various candies, ornaments, tags, identification badges, reflectors, markers, etc.

The *Encyclopaedia Britannica* (1947 ed.) states as follows:

> BUTTON, a small piece of metal or other material which, pushed through a loop or buttonhole, serves as a catch between different parts of a garment, etc. * * * Buttons of distinctive colour or patterns, or bearing a portrait or motto, are often worn, especially in the United States, as a decoration, or sign of membership of a society or of adherence to a political party * * *.

---

[4] The same result would follow even if the articles were chiefly used for decorative purposes. See e.g., *Fred Bronner Corp.* v. *United States, supra,* 57 Cust. Ct. at 436, and cases there cited;, *Wilson's Customs Clearance, Inc.* v. *United States, supra,* 59 Cust. Ct. 36.

[5] There is no dispute that the articles are of metal, are not embossed, and are valued not over 20 cents per dozen.

In *Blumenthal & Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 327, 331, T.D. 34529 (1914), the court pointed out: "The ordinary meaning of the word 'button' is a knob, globe, or disk of some substance having a shank or perforation or other means by which it may be attached to one part of a garment and used to join it to another part by passing through a buttonhole, *or it may be used for ornamentation wholly.*" [Emphasis added.]

Further, it has been held that for tariff purposes a button need not be a fastening device, but may be ornamental only. In *Harlem Adler & Co., Inc.* v. *United States*, 73 Treas. Dec. 123, T.D. 49362 (1938), the item in question was a button used solely for ornamentation. After citing dictionary definitions, the court stated that the item was "a button even though it may be used for ornamentation solely* * *." Id. at p. 126. Having determined that the item was a button, the court ruled that the fact that it was ornamental did not accord it classification as jewelry, "for the reason that the *eo nomine* provision in paragraph 1510 'buttons not specially provided for' is more specific than the more general provision 'jewelry, commonly or commercially so known,' in paragraph 1527(a)." Ibid. The court added (p. 127):

> * * * This paragraph is quite plain and unambiguous, and we do not have to go into its legislative history to determine the meaning of the word "button." The paragraph itself after providing specifically for various kinds of buttons, parts of buttons, and button molds or blanks, concludes by specifying "buttons not specially provided for." Such provision is broad enough to cover every conceivable kind of button, even such unusual buttons as Exhibit 1, provided the button is not specially provided for. * * * The words "buttons not specially provided for" are clear and understandable to all.

The same reasoning applies in this case. The fact that the articles here—which are commonly and commercially known as buttons—are not typical buttons used as fastening devices in no way precludes their being classified under item 745.08 as metal buttons not embossed, valued not over 20 cents per dozen. Where a provision, such as item 745.08, describes an article by name without terms of limitation, all forms of the article are included unless a contrary legislative intent is shown. *Quong Lee & Co. et al.* v. *United States*, 10 Cust. Ct. 23, 30, C.D. 716 (1942). And in this connection, there is no indication that Congress did not intend to include all buttons, including purely ornamental ones, within this item.[6]

Having determined that the imported articles are classifiable under 745.08 as buttons, headnote 3 of schedule 7, part 6, subpart A excludes

[6] The fact that the title of part 7 of schedule 7 of the Tariff Schedules of the United States refers to "other fastening devices" does not indicate any such limitation, since the titles to the various schedules, parts and subparts have no legal or interpretative significance. General Headnote 10(b), Tariff Schedules of the United States.

them from being classified as jewelry or other objects of personal adornment. Nor are the importations classifiable under items 657.15 and 657.20, as alternatively claimed by plaintiff. These items are applicable only if the articles are not more specifically provided for elsewhere in the tariff schedules. Headnote 1, schedule 6, part 3, subpart G. Since the articles are more specifically provided for as buttons under item 745.08, they are foreclosed from classification under items 657.15 and 657.20.

We therefore hold that the importations in issue were erroneously classified by the government as toys and that they are properly classifiable under item 745.08 as buttons of metal, not embossed, and valued not over 20 cents per dozen and dutiable at the rate of 10 percent ad valorem.

The protests are sustained and judgment will issue accordingly.