(C.D. 4025)

LARAMI CORP., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided May 26, 1970)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Herbert T. Posner* and
*Andrew P. Vance*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

MALETZ, Judge: This case involves the proper tariff to be assessed on rubber kives in rubber sheaths that were imported from Japan. The government classified them as toys under item 737.90 and assessed duty at 35 percent.[1] Plaintiff claims they are properly dutiable at 20 percent under item 737.65 as practical joke articles.[2]

The import, in particular, consists of a rubber knife about eight inches in length, encased in a rubber sheath. The handle of the knife is made of black rubber with an embossed design simulating wood grain. The blade—also made of rubber—is colored to resemble metal. The sheath has etched on the front a gold-colored figure of a cowboy.

The importation was shipped in small plastic bags sealed at the top by a piece of yellow cardboard which depicts a cowboy menacing a man with a knife. The writing on this cardboard states "TRICK RUBBER DAGGER—REALISTIC BUT HARMLESS—MADE IN JAPAN."

At the trial, plaintiff introduced in evidence a sample of the importation and rested. It points out that in a toy case a sample of an imported article is sometimes sufficient, in and of itself, to overcome the presumption of correctness,[3] and argues that in the present case examination of the sample, without more, demonstrates that the chief use of the import is as a practical joke article. Defendant—relying heavily on the testimony of a staff psychologist for the Philadelphia school system—argues that the import is not a practical joke article but merely a toy.

---

[1] Schedule 7, Part 5, Subpart E :
    Toys, and parts of toys, not specially provided for :

| | | | | | | |
|---|---|---|---|---|---|---|
| ˙∗ | ∗ | ∗ | ∗ | ∗ | ∗ | ∗ |

737.90   Other _____ 35% ad val.
[2] Schedule 7, Part 5, Subpart E :
737.65   Magic tricks, and practical joke articles_____ 20% ad val.
[3] See e.g., *United States* v. *Sears, Roebuck & Co.*, 27 CCPA 235, 238, C.A.D. 91 (1940) ; *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36. 40, C.D. 3061 (1967).

The common meaning of the term "practical joke," as used in item 737.65, was previously considered in *Davies, Turner & Co.* v. *United States*, 58 Cust. Ct. 524, C.D. 3037, 270 F. Supp. 21 (1967). The court cited the following dictionary definitions of the term (p. 526) :

Webster's Third New International Dictionary of the English Language, unabridged (1966) :

practical joke, n : a joke whose humor stems from the tricking or abuse of an individual placed somehow at a disadvantage.

Funk and Wagnalls Standard Dictionary, international edition (1963) :

practical joke. a joke involving action instead of wit or words; a prank or trick

Webster's New International Dictionary, second edition (1934) :

practical joke – a joke put in practice, the fun consisting in what is done rather than what is said; esp., a trick played on a person, usually involving some roughness.

These definitions were augmented by the testimony of a witness that a practical joke article is one that depends "primarily [on] the element of surprise or startling the one who the joke is played on," and offered as examples a camera from which something pops out or bitter-tasting chewing gum.[4] Based on the foregoing, the court in *Davis, Turner* construed the term "practical joke article" thusly (ibid.) :

The salient characteristics of a practical joke appear to be : (1) action or the doing of something and (2) the tricking or placing at some disadvantage the recipient of the action. It would seem to follow, therefore, that a practical joke article is one used to effectuate a trick or to place a recipient at a humorous disadvantage.

Against this background, it follows that in order to establish by sample alone that a knife or dagger is chiefly used as a practical joke article, it must—at the very least—be sufficiently realistic to cause fear or alarm when brandished so that surprise and humor are evoked when it is realized that the article is simply a toy. If, however, the article is not sufficiently realistic to cause apprehension or alarm, there is no trick or joke involved and the article cannot be considered a practical joke item.

Applying these considerations here, it is evident from an examination of the sample that the import is scarcely so realistic as to be mistaken for a real knife or dagger even by a child, as evidenced by the fact (for example) that the rubber blade is so flexible that it flops back and forth at the slightest motion. The conclusion is thus inescap-

---

[4] The witness in that case was the president of the plaintiff-importer here.

able that the sample is insufficient in and of itself to establish that the importation is chiefly used as a practical joke article. This conclusion is emphasized by the testimony of the government's witness that this type of rubber dagger is used in "pursuit and overcome" play, such as cowboys and indians, soldiers and war; and that when a child is "struck" by such a dagger, he is neither alarmed nor surprised. Plaintiff, in short, has failed to overcome the presumption of correctness attendant upon the government's classification.

The protest is overruled, and judgment will issue accordingly.