(C.D. 4137)

Sports Specialties Corp *v.* United States

United States Customs Court, First Division

(Decided December 1, 1970)

*Glad & Tuttle* (*Robert Glenn White* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

Before Watson, Maletz, and Re, Judges

Maletz, Judge: This case involves papier-mache figures that were imported from Japan via the port of New York in 1965. They were

classified by the government as toy figures of animate objects under item 737.40 of the tariff schedules and assessed duty of 35 percent. Plaintiff claims that this assessment is erroneous and that the imports are properly dutiable at 8.5 percent under item 256.75 as articles of papier-mache.

The statutes with which we are concerned read as follows:

Classified under:

Schedule 7, Part 5, Subpart E:

Subpart E headnotes:

    *       *       *       *       *       *       *

    2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

    *       *       *       *       *       *       *

Toy figures of animate objects (except dolls):
    Not having a spring mechanism:

    *       *       *       *       *       *       *

        Not stuffed:

    *       *       *       *       *       *       *

737.40            Other _____    35% ad val.

Claimed under:

Schedule 2, Part 4, Subpart D:

    *       *       *       *       *       *       *

Articles, of pulp, of papier-mâché, of paper, of paperboard, or of any combination thereof, not specially provided for:

    *       *       *       *       *       *       *

256.75            Of papier-mâché_____    8.5% ad val.

The imported articles were invoiced as "Mascots" and consist of 6½-inch-high figures of animate objects in chief value of papier-mâché, which represent or symbolize major league baseball players or clubs. Thus, one mascot is a caricature of Willie Mays of the San Francisco Giants dressed in a Giants uniform. A second—suited in a St. Louis Cardinals uniform—depicts the head of a cardinal bird atop a caricature of the body of a baseball player. A third mascot is a caricature of a boy dressed in a Philadelphia Phillies uniform.

The head of each mascot figure is attached to the neck by a concealed wire spring consisting of some 12 coils. This spring arrange-

ment is constructed in such a way that a slight touch, movement or vibration of any part of the figure will cause the head to bob, shake, weave and vibrate in a comic, amusing and rather lifelike manner.

According to the testimony of the president and principal owner of plaintiff (who was the sole witness at trial), the imports are not distributed through toy jobbers or department stores but rather are sold exclusively at sports stadiums throughout the country. The witness testified that the imports are collected as souvenirs and ornaments and are displayed on office desks or cabinets; in cars; and in various places in the home, such as the shelves in children's rooms. He further testified that the articles are used for decorative and ornamental purposes and are incapable of providing amusement because they are not used in games and are too fragile to be useful for children's play. In the witness' opinion, the only type of amusement offered by these mascots is the indirect transfer effect of pleasure derived from identification with the symbol—which reminds the fan of his interest and allegiance to the team of his choice. As an example, the witness indicated that some fans place the mascots representing participating teams near or on the radio or television set when watching or listening to a game. Thus, the witness continued, the mascot amuses the fan when his team is winning; however, "he feels sick" when the team is losing. The witness emphasized that children are very serious about sports and buy these articles because they "love the game" and not as a source of amusement. The sole purpose of the spring-mounted head, the witness said, is to give an "active, livable" quality to the figure itself.

In this setting, plaintiff argues that the record establishes that the import is chiefly used as a decorative or ornamental article rather than as a plaything and hence is properly classifiable not as a toy but as an article of papier-mache. In this connection, it has already been noted that under the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults. However, it is settled law that not everything that amuses is a toy; for an article to be classified as a toy for tariff purposes, it must be a plaything. E.g., *Topps Chewing Gum, Inc.* v. *United States*, 63 Cust. Ct. 431, C.D. 3930 (1969) (appeal pending); *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, 39, C.D. 3061 (1967). Thus, articles chiefly used for ornamental, decorative or display purposes have been held to be outside the scope of the toy provision. E.g., *Fred Bronner Corp.* v. *United States*, 57 Cust. Ct. 428, 436, C.D. 2832 (1966). However, the present importations do not fall within this category. For samples are potent witnesses and examination of samples of the present importations impels the conclusion—contrary to the testimony of plaintiff's witness—that the importations are designed primarily and are eminently

suitable for use as playthings for amusement rather than for ornamental, decorative or display purposes. This is emphasized by the fact that a key feature of the mascot is the spring-mounted head which, as we have seen, bobs, shakes, weaves and vibrates in a comic, amusing and lifelike manner when subjected to any slight touch, movement or vibration.

Nor can we agree with the further testimony of plaintiff's witness that the imported mascots are incapable of providing amusement because they are not used in games and are too fragile to be useful for children's play. In the first place, an article does not have to be used in a game to qualify as a toy. Second, examination of the mascots makes it plain that they are not too fragile to be useful for children's play.[1] But even were it to be assumed that they are, they still would not be precluded from being classified as toys since the tariff schedules define a toy as an article chiefly used for amusement of *adults* as well as children.

Quite distinguishable is *Wilson's Customs Clearance, Inc.* v. *United States, supra,* 59 Cust. Ct. 36, on which plaintiff places major reliance. In *Wilson's,* the court held that figures representing dogs were erroneously classified by the government under item 737.40, the provision for toy figures of animate objects (which is the same provision that is involved here). These figures, the court found, were substantially incapable of functioning as objects of play or amusement in any normal or intelligent use, for the following reasons: (1) the presence of a sharp and easily exposed hook and the toxic nature of the material used, made the articles unsuitable for children of tender years; (2) as for those over puberty, the figures were "passive," "uncomical," and "nonmanipulatable" (*id.* at 40); and (3) they were "finely finished replicas of well-known dog species" and "[a]s such * * * eminently suitable for purposes of display or ornamentation, no matter where that may be." *Ibid.*

The situation here is materially different. For one thing, the imported mascot does not contain a sharp hook, toxic material or anything else that would present an imminent danger to children of tender years; in fact, the evidence shows that these items are frequently collected by boys between the ages of eight and twelve. Second, the present importations are not passive, uncomical and nonmanipulatable. Rather, the spring-mounted head is extremely manipulatable and the figure itself is not only comic in appearance, the

---

[1] Of course, "the fact that merchandise is made of cheap flimsy construction hardly precludes its classification as a toy." *The Spesco Corporation* v. *United States,* 62 Cust. Ct. 297, 304, C.D. 3749 (1969).

comic appearance becomes even more pronounced when the head bobs, shakes or weaves. Finally, as even a casual examination makes evident, the imported figures here involved are not "finely finished replicas" suitable for display or ornamentation.

Distinguishable also is *Fred Bronner Corp* v. *United States, supra,* 57 Cust. Ct. 428, where the court held that miniature vehicles representing antique and classic cars were improperly classified as toys under paragraph 1513 of the Tariff Act of 1930 but rather were properly classifiable as articles of metal under paragraph 397. The basis of the holding was (1) that "in attention to detail, in handsomeness of design, and in historical content, the items * * * appear well suited for the purposes of collection and display," (*id.* at 436), and (2) that the miniatures' "potential for amusement appears to be subordinate to their predominant features for display or decoration." *Id.* at 436–37. Here, on the other hand, as we have previously indicated, not only do the imported mascots lack such aesthetic qualities as to render them suitable for display or decoration, their predominant feature is for amusement as a plaything.

In short, we conclude that the imported mascots are toy figures of animate objects within the meaning of the tariff schedules. The protest is overruled. Judgment will issue accordingly.[2]

(C.D. 4138)

RICO IMPORT CO. *v.* UNITED STATES

---

[2] Neither party has raised the question as to whether or not the imports are properly classifiable under item 737.50 as other toy figures of animate objects having a spring mechanism rather than under item 737.40 as other toy figures of animate objects not having a spring mechanism. In such circumstances, we pretermit that question.