(C.D. 4304)

PARKSMITH CORPORATION *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 14, 1971)

*Serko & Sklaroff* (*Murray Sklaroff* and *Elizabeth E. Mills* of counsel) for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Urban S. Mulvehill*, trial attorney), for the defendant.

Before Watson, Maletz, and Re, Judges

Maletz, Judge: The merchandise in these cases, which was manufactured in Japan and entered at the port of New York, consists of a small figure of a female called "Sexy Anna" clad in a one-piece, strapless bathing suit. When the stomach of the figure is pressed, the upper portion of the bathing suit drops and the breasts are exposed and distended. The figures covered by protest 66/50647 were classified by the government under item 737.40 of the tariff schedules as toy figures of animate objects and assessed duty of 35 percent, while the figures covered by protest 67/2985—which are identical to those in 66/50647—were classified under item 737.90 as other toys, not specially provided for, and assessed the same duty of 35 percent.

At the trial, the government took the position that item 737.40—the provision for toy figures of animate objects—is the more specific description of the imported merchandise. For that reason, in protest 67/2985 the government abandoned its classification under item 737.90 (which covers other toys, not specially provided for) and makes an alternative claim for classification under item 737.40.[1]

Plaintiff claims that the imports in both cases are classifiable under item 737.65 as practical joke articles, dutiable at 20 percent. Alternatively, it claims that the imports are classifiable under item 774.60 as other articles of rubber or plastic, not specially provided for, dutiable at 17 percent.[2]

In support of its position that the import is a practical joke article, plaintiff called as its sole witness a person who is a salesman and assistant purchasing agent for a division of the plaintiff company which distributes souvenirs and novelty items. He testified that the Sexy Anna became part of the company line about six years ago; that he personally had sold in excess of 30 gross thereof; that he sold it to only seven to ten stores in the Times Square area of New York City which "usually handle trick, joke and gag items"; and that he also sold it to jobbers from large cities with similar areas.

When asked how he would "categorize" the import, the witness replied "[a]s a gag item. A practical joke item." (R. 11) He considered a gag item to be an article "where the person showing this item to someone else derives a certain amount of pleasure from seeing the reaction of surprise or a chuckle on the part of the person who it is being shown to." (*Ibid.*) He further indicated that a common feature in all practical joke articles is that it takes two people to have an item fulfill "what

---

[1] By virtue of the holding in *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, 58–59, C.A.D. 1004, 435 F. 2d 1315, 1318–19 (1970), this alternative claim advanced by the government still enjoys the presumption that the import is a toy.

[2] Plaintiffs brief makes no mention of a second alternative claim it advanced earlier at pretrial—i.e., that the imports are classifiable under item 772.75 as inflatable articles, not specially provided for. For this reason, this alternative claim is deemed abandoned.

it is meant to have been" and that the "person who it is being shown to laughs, gives a reaction of surprise, and this gives the person who demonstrated it the pleasure of the item." (R. 12–13) The witness also testified that he did not consider the import a toy.

On cross-examination the witness indicated that if the imported figure were passed around by a group of men in a bar or in a fraternity house, they would find it amusing the first time and get a chuckle out of it. According to the witness, "once you demonstrate it once, and the person who saw it, and chuckled, * * * if he would show it again, the element of surprise, the thing that makes up the practical joke is gone, and therefore it would lose its purpose * * *. (R. 15–16).

Defendant's first witness, a high school teacher, testified that she had seen the import several years ago when it was passed around at a family gathering by her uncle who had received it as a Christmas gift. She testified that she laughed when she saw it, but did not feel embarrassed. Asked whether she felt a gag had been played on her, she testified that she did not and just laughed along with the rest of the family.

Defendant's second witness had been employed for three years at the time of trial as a saleswoman for a store in the Times Square area of New York which sells tricks, jokes, souvenirs and gifts. For some 12 years before that, she operated a similar store of her own. She testified that she had personally sold the Sexy Anna and had observed people react to it. She stated that "[t]hey think it's funny, amusing. They laugh a little." (R. 23) Continuing, she testified that she would not characterize it as a practical joke item, adding that "a practical joke [article] is something you come in contact with—something that startles you, something that does something to you * * *." (R. 23) The witness then gave two examples of what she considered practical joke items: the first, a "shock" book which when opened gives the person a shock; the second, a can of peanut brittle, inside of which are three snake-like objects that pop out when the can is opened.[3] She also testified that she agreed with the following definition of a "practical joke" in *Webster's Third New International Dictionary* (1963): "A joke whose humor stems from the tricking or abuse of an individual placed somehow at a disadvantage." She said that the import definitely did not trick or abuse or put anyone to a disadvantage.

During cross-examination, the can of peanut brittle was again demonstrated by the witness. Asked to describe the reaction, she stated that people are taken aback and are a little startled and frightened. She also stated that she had heard laughter in the courtroom and explained that something which frightens you is funny. She further indicated that she laughed at the reaction of the people in the courtroom and said

---

[3] The article was demonstrated to the court by the witness.

that from her own personal experience she knew that the first time a persons opens the can of peanut brittle, he is startled, taken aback and frightened—then later he will laugh.

It is against the background of this record that we now proceed to determine whether plaintiff has proven that the imported figure is not properly classifiable under item 737.40 as a toy, i.e., an article chiefly used for the amusement of children or adults, but rather comes within the purview of item 737.65 as a practical joke article. On this latter aspect, two recent cases have examined the meaning of the term "practical joke." *Davies, Turner & Co.* v. *United States*, 58 Cust. Ct. 524, C.D. 3037, 270 F. Supp. 21 (1967); *Larami Corp., Inc.* v. *United States*, 64 Cust. Ct. 496, C.D. 4025 (1970). In both, the following dictionary definitions were cited (58 Cust. Ct. at 526; 64 Cust. Ct. at 498):

> *Webster's Third New International Dictionary of the English Language*, unabridged (1966):
>     practical joke, n: a joke whose humor stems from the tricking or abuse of an individual placed somehow at a disadvantage.
> *Funk and Wagnalls Standard Dictionary*, international edition (1963):
>     practical joke, a joke involving action instead of wit or words; a prank or trick.
> *Webster's New International Dictionary*, second edition (1934):
>     practical joke—a joke put in practice, the fun consisting in what is done rather than what is said; esp., a trick played on a person, usually involving some roughness.

It is obvious from the foregoing that a practical joke is a joke whose humor arises from somehow placing an individual at a disadvantage through a trick or prank. Also to be noted, "the term 'practical joke articles' is a provision governed by use and, as such, the provisions of General Interpretative Rule 10(e)(i) of the General Headnotes and Rules of the Tariff Schedules of the United States make chief use the controlling factor in classification thereunder." *Davies, Turner & Co.* v. *United States*, supra, 58 Cust. Ct. at 527.

In this setting, the testimony of plaintiff's witness falls far short of establishing that the "Sexy Anna" is chiefly used as a practical joke article rather than as a toy. The fact that the witness considered it to be a gag or practical joke item has little probative value on the issue of chief use in the absence of any indication whatever in the record that his sales activities at the wholesale level gave him an opportunity to observe Sexy Anna in use. See *Strauss-Eckhardt Co., Inc.* v. *United States*, 18 Cust. Ct. 140, Abstract 51507 (1947). In these circumstances, mere characterization of the merchandise by the witness is not a substitute for proof. See e.g., *Palmar Import Co., Inc.* v. *United States*, 57 Cust. Ct. 2, 5–6, C.D. 2708 (1966); *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 63 Cust. Ct. 128, C.D. 3886 (1969). Further, the

testimony of defendant's witness, who had 19 years of first-hand retail experience, directly contradicted the testimony of plaintiff's witness, and although insufficient to establish chief use in its own right, supports the presumptively correct classification. She testified that she had sold Sexy Anna and watched people react to it and stated flatly that it was not a practical joke item. She also testified that it did not trick, abuse, or place anyone at a disadvantage, but rather, people think it's "funny, amusing." (R. 23, 24, 26) This was corroborated by another witness for defendant who testified that she and her family got a laugh from Sexy Anna as they passed it around a family gathering.

The testimony of plaintiff's witness is subject to the further infirmity that it is based on an apparently mistaken impression of what constitutes a practical joke or gag item. Thus, the witness (as previously indicated) considered a practical joke or gag item to be an article "where the person showing this item to someone else derives a certain amount of pleasure from seeing the reaction of surprise or a chuckle on the part of the person who it is being shown to." But this does not comport with the common understanding of a "practical joke" which (as we have seen before) is a joke whose humor arises from somehow placing an individual at a disadvantage through a trick or prank.

Lastly, we are quite aware of the fact that in toy cases in particular "the sample merchandise can offer potent evidence on the question of use." *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, 40, C.D. 3061 (1967). Indeed, "[t]here is precedent under the two previous tariff acts for viewing sample evidence as sufficiently persuasive to rebut the presumption of correctness on a toy classification and to shift the burden to the defendant." *Ibid.* In this context, we think it clear from the sample itself that the Sexy Anna figure has considerable potential in amusing a group of adults as they pass it around. Thus, even plaintiff's witness readily acknowledged that he could conceive of Sexy Anna amusing a group of men in a bar or fraternity house. No doubt, some individuals would react with considerable embarrassment when given the Sexy Anna, asked to press the stomach, and then seeing what happens next. To this extent, a practical joke may well have been played on such individuals through use of the imported figure. However, we have no way of knowing whether or not this is the chief use of "Sexy Anna." Nor does the record enlighten us.

From what has been said, it is concluded that plaintiff has failed to rebut the presumption that the import is a toy—i.e., chiefly used for amusement. The protests are therefore overruled, and judgment will be entered accordingly.