(C.D. 4512)

EXHIBIT SALES, INC. *v.* UNITED STATES
(AMICO, INC.)

Court Nos. 69/14611 and 69/21988

(Dated April 9, 1974)

*Allerton deC. Tompkins* for the plaintiff.

*Carla A. Hills,* Assistant Attorney General (*Robert B. Silverman,* trial attorney), for the defendant.

NEWMAN, Judge: The issue in these two consolidated protests concerns the proper tariff classification of certain toy caricatures, invoiced as "Mister Egg Head", imported from Japan in 1968.

The articles were classified under item 737.90 of the Tariff Schedules of the United States (TSUS) as toys, not specially provided for, not having a spring mechanism, and assessed with duty at the rate of 31 per centum ad valorem. Plaintiff claims that the articles are properly dutiable at the lower rate of 18.5 per centum ad valorem under the provision in item 737.35, TSUS, for toy figures of animate objects.

The pertinent portions of the tariff schedules read:

Schedule 7, part 5, subpart E:

Subpart E headnotes:

\* \* \* \* \* \* \*

2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.

Classified under:

Toys, and parts of toys, not specially pro-
vided for:

| | | |
|---|---|---|
| * * * | Toys having a spring mechanism__ | * * * |
| 737.90 | Other _____ | 31% ad val. |

Claimed under:

Toy figures of animate objects (except (dolls):
Not having a spring mechanism:

\*     \*     \*     \*     \*     \*     \*

Not stuffed:

| | | |
|---|---|---|
| 737.35 | Wholly or almost wholly of metal_ | 18.5% ad val. |

The parties agree that there is no genuine issue as to any material fact, and have filed cross-motions for summary judgment pursuant to rule 8.2. Additionally, defendant has admitted to its amended answer that the articles in issue are "toy figures". The question to be decided, in short, has been narrowed by the parties to whether such figures are of "animate objects" within the purview of item 737.35, TSUS.

For the reasons stated hereinafter, plaintiff's motion is granted, and the protests are sustained.

Plaintiff has submitted a sample of the imported toys, which defendant concedes is representative. The sample may be described as follows: The toy figure consists of a small (about five inches tall) caricature of a fireman, somewhat egg-shaped, but flat on the bottom. The metal has been painted to represent human features, clothing and a firehose. On the anterior surface of the figure there are three openings: a tongue permanently protrudes through one opening, which represents the mouth; and two movable eyes are inside the other two openings. The head of the fireman occupies more than half of the caricature, and there is no distinct neck. A hat on top of the head bears the initials "F.D." (fire department), and a metal rod projects vertically out of the hat. The arms extend down the sides of the body, supported by a rod passing horizontally through the body. The figure is without visible legs, and in lieu thereof, three wheels (two front and one rear) protrude through openings in the flat bottom of the figure. When the rod projecting from the top of the hat is manually depressed and then released, a mechanism inside the figure is activated which: (1) causes the two front wheels to revolve (the rear wheel is not activated) and propel the figure forward when on a flat surface, and (2) causes the eyes and protruding tongue to move up and down.

Plaintiff contends that a caricature of a fireman represents a living being, and therefore is a figure of an "animate object" within the purview of item 737.35, TSUS.

Defendant, on the other hand, contends that the imported toy attempts to give human features to an egg-shaped object, rather than attempts to be representative of an animate object.

Further, defendant argues that the imported article differs from humans in the following respects: humans do not have a semielliptical shape, nor do their heads connect directly to their bodies; the head of the human does not comprise one-half to two-thirds of the entire body, and the tongue does not permanently protrude; humans do not have wheels for propulsion, nor the rod extending out of the top of the figure.

I agree with plaintiff's position that the imported toys are caricatures * of an animate object (a fireman), and that such caricatures are properly dutiable under item 737.35, TSUS.

Significantly, item 737.35 does not cover simply figures of animate objects, but *toy* figures of animate objects. Pursuant to headnote 2, schedule 7, part 5, subpart E, "toys" are articles chiefly used for *amusement*. Obviously, the caricatural form of the fireman contributes substantially to its amusement value. In brief, inasmuch as item 737.35 was intended to cover *toy* figures of animate objects, which must be chiefly used for amusement, and since caricatures are not expressly excluded from the statute, I have concluded that caricatures of animate objects, such as those involved in this case, are within item 737.35.

In *Sports Specialties Corp.* v. *United States*, 65 Cust. Ct. 550, C.D. 4137 (1970), the court held, without discussion, that the Government's classification of various caricatures, representing or symbolizing major league baseball players, was correct.

Moreover, I have noted that the Bureau of Customs has ruled that a cartoon-type horse, consisting of twisted flexible wire covered with solid plastic, permitting the article to be twisted into a variety of shapes and poses, is classifiable under the provision for toy figures of animate objects. 100 Treas. Dec. 732, T.D. 56516(193) (1965).

Defendant has cited *Lewis Galoob Co.* v. *United States*, 66 Cust. Ct. 484, C.D. 4239 (1971) and *Louis Marx & Co., Inc.* v. *United States*, 66 Cust. Ct. 139, C.D. 4183 (1971) as pertinent to the issue here.

In *Galoob*, battery-operated "Swivel-O-Matic" astronauts consisting of mechanical robots were held not to be dutiable as toy figures of animate objects within the purview of item 737.35, TSUS, since the term "figures of animate objects" includes only those figures which represent living beings. The presence of a human face in the robots was held immaterial, Judge Maletz stating (66 Cust. Ct. at p. 486):

---

*Webster's Third New International Dictionary* (1966) provides the following definition of the word "caricature":

caricature * * * 1a: exaggeration by means of deliberate simplification and often ludicrous distortion of parts or characteristics * * *

\* \* \* Put otherwise, the addition of "facial" features to what otherwise represents a robot or inanimate being is not sufficient to transform the present article into a figure of an animate object for the reason that the article does not represent any living being. \* \* \*

*Galoob* is plainly distinguishable from the present case, since unlike a mechanical robot, a fireman is indeed an animate object. The rod extending from the top of the article and the wheels are merely attributes of, and incidental to, the toy nature of the article.

*Marx* involved the proper tariff status of certain toys invoiced as "Mechanical Hopping Munchie Mellon Series", which were described by Judge Maletz as follows (66 Cust. Ct. at p. 140):

The imported article is shaped in the form of a stubby bullet atop extremely short legs and highly elongated feet. Each figure (depending on the model) is a small representation of a watermelon, a corn or a banana with the added characteristic of having painted or included thereon cartoon-type facial features, such as eyes, eyebrows, nose and mouth. [Footnote reference omitted.] This is done in such a manner as to make the bullet-shaped portion of the melon, corn or banana resemble both a head and a body. On the right-hand side of each figure is a key which winds a spring mechanism that is contained in the interior. Activation of the spring mechanism causes the toy to hop on its elongated feet in a highly amusing manner.

After reviewing definitions of the terms "animate" and "figure", Judge Maletz concluded that the phrase "figures of animate objects" in the TSUS "must be read to mean forms or representations of humans or animals". Based upon that construction of the statute, it was observed (66 Cust. Ct. at 143):

From what has been said, the necessary conclusion is that the present importations representing as they do a melon, a corn and a banana with facial features added are not figures of animate objects since *they do not represent any living being.* Moreover, the only witness who testified at trial—plaintiff's assistant import manager who participated in the development of the importations—readily agreed that *were it not for these facial features, the importations would have simply represented a plain watermelon, a banana or a corn.* Just as the addition of "facial" features to a toy truck, for example, will not turn it into a toy figure of an animate object, the addition of facial features to what otherwise admittedly represents a melon, banana or corn is scarcely sufficient to transform the article into a figure of an animate object. For in neither case does the article represent an animate being. \* \* \* [Emphasis added.]

*Marx*, too, is clearly distinguishable from the instant case. While the toy here was invoiced as "Mister Egg Head", it plainly does not represent an egg transformed into a fireman by paint and the other features.

Thus, the fireman here is not analogous to the watermelon, banana, and corn figures in *Marx*, which represented plant life with human characteristics.

In summary, while I agree with the holdings in *Galoob* and *Marx* that the provision in the tariff schedules for "figures of animate objects" refers to representations of humans or animals, I find those cases distinguishable on their facts from the present case. Moreover the fireman, although in the form of a caricature, represents a human being, and consequently falls within the criterion of an animate object as enunciated in *Galoob* and *Marx*.

It is hereby ORDERED:

1. Plaintiff's motion for summary judgment is granted.

2. Defendant's cross-motion for summary judgment is denied.

3. The district director of customs at the port of Philadelphia is directed to reliquidate the entries covered by the protests in this case respecting the items identified on the invoices as "Mister Egg Head" at the rate of 18.5 per centum ad valorem pursuant to item 737.35, TSUS, as modified by T.D. 68–9.